UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
JOSE R GONZALEZ, on behalf of himself, FLSA
Collective Plaintiffs and the Class,

                               Plaintiff,

        v.

WICKED TACO LLC, d/b/a BONGO
BURRITO, *et al.*,

                            Defendants.
------------------------------------------------------------------------x

**OPINION AND ORDER**

23-CV-9555
(Merle, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

      Plaintiff Jose Gonzalez brings this action on behalf of himself, and others similarly situated,

against Defendants Wicked Taco LLC d/b/a Bongo Burrito ("Bongo Burrito"), NDL Restaurant

Corp. d/b/a Charred Brick Oven ("Charred Brick Oven"), D & L Restaurant Corp. d/b/a Puglia's

("Puglia's"[1]), and Gregory Garofalo (collectively, "Defendants"), alleging claims under the Fair

Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), the N.Y. Labor Law

("NYLL"), and the New York State Earned Safe and Sick Time Act ("ESSTA").  *See* Dkt. No. 1.

Presently before the Court are two contested motions: first, Plaintiff's motion for conditional

certification of a FLSA collective as a representative collective action pursuant to 29 U.S.C. §

216(b) (Dkt. Nos. 38-39); and second, Plaintiff's motion to amend the Complaint to include claims

under the Americans with Disabilities Act  ("ADA") and the New York State Human Rights Law,

---

[1] In the Complaint, Plaintiff refers to Puglia's as "Puglia's," "Puglias," and "Puglia's Italian Steakhouse."
*See* Dkt. No. 1.  The Court will refer to this establishment as "Puglia's" herein.

N.Y. Exec. Law § 296 ("NYSHRL"), as well as to name an additional defendant, identified by Plaintiff as "Lobster Shack" (Dkt. No. 52) (together, "Plaintiff's Motions").[2]

For the reasons explained below, the Court grants in part and denies in part Plaintiff's Motions.[3]

## I.   Background

### A.   Factual Background

#### i.   The Defendants

The Complaint, the proposed First Amended Complaint, and the accompanying affidavits and declarations establish the following relevant facts, which are taken as true only for the purposes of assessing Plaintiff's motion. *See Wilk v. Quality Installations of NY, Inc.*, 724 F. Supp. 3d 76, 81-82 (E.D.N.Y. 2024) (drawing factual record from such documents on order for conditional FLSA collective certification); *Ramirez v. Cnty. of Nassau*, 345 F.R.D. 397, 399 (E.D.N.Y. 2024); *Jun Hua Yang v. Rainbow Nails Salon IV Inc.*, No. 18-CV-4970 (DLI) (SJB), 2019 WL 2166686, at *3 (E.D.N.Y. May 16, 2019).

In the Complaint, Plaintiff names three corporate defendants: Wicked Taco LLC, doing business as the restaurant called Bongo Burrito; NDL Restaurant Corp., doing business as the

---

[2] Plaintiff initially sought to amend the Complaint to add a claim under New York City Human Rights Law, N.Y.C. Admin Code § 8-101 et seq. ("NYCHRL"). As noted below, Plaintiff subsequently withdrew his request to amend the Complaint to include the NYCHRL claim. *See* Dkt. No. 60.

[3] Federal law permits "a magistrate judge to hear and determine any pretrial matter pending before the court," 28 U.S.C. § 636(b)(1)(A), including a motion for conditional certification of a collective action, which is only a "preliminary determination" and not dispositive. *See Patton v. Thomson Corp.*, 364 F. Supp. 2d 263, 265-67 (E.D.N.Y. 2005); *see, e.g., Lin v. JD Produce Maspeth LLC*, No. 20-CV-2746 (WFK) (TAM), 2021 WL 5163218, at *1 (E.D.N.Y. Nov. 5, 2021) ("It is well settled that a magistrate judge has authority to decide a motion for certification of a collective action."); *Bliss v. Patterson*, No. 19-CV-353 (LDH) (AYS), 2022 WL 523547, at *3 (E.D.N.Y. Feb. 22, 2022) (same); *Jian Guo Yang v. Zhou's Yummy Rest., Inc.*, No. 19-CV-5203 (CBA) (SJB), 2020 WL 2738403, at *1 (E.D.N.Y. Apr. 28, 2020) (same); *Jun Hua Yang v. Rainbow Nails Salon IV Inc.*, No. 18-CV-4970 (DLI) (SJB), 2019 WL 2166686, at *1 (E.D.N.Y. May 16, 2019) (same); *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 383–84 (E.D.N.Y. 2010) (Hurley, J.) (collecting cases).

restaurant called Charred Brick Oven; and D & L Restaurant Corp., doing business as the restaurant called Puglia's.  *See* Dkt. No. 1.  Mr. Garofalo is the owner and executive officer of the corporate defendants and the individual restaurants.  *See id.* at ¶¶ 8-13.  As alleged in the Complaint, Bongo Burrito, Charred Brick Oven, and Puglia's are all located on Merrick Road in Seaford, New York.  *See id.* at ¶ 8.[4]

According to Plaintiff, Mr. Garofalo opened Puglia's in approximately 2018 or 2019, "right before Covid."  Dkt. No. 48-1 at 4.[5]  Puglia's was a restaurant "with the décor [of] that of an upscale restaurant" which "served steaks and Italian specialties," including various cuts of meat and fish.  Dkt. No. 42 at 12; Dkt. No. 43-3; Dkt. No. 42-2 ("Puglia['s] Italian Steakhouse is a fine restaurant in Seaford that provides its customers with great service and quality food").  Meals at Puglia's included a $38 Braised Beef Short Rib Osso Bucco entree and a $48 Colorado Lamb Chops dinner.  Dkt. No. 43-3.  Puglia's was "shut down" due to a fire that occurred at the restaurant on June 30, 2023.  Dkt. No. 43 at ¶ 5.  Puglia's never reopened; it was thereafter rebranded to Nola, which opened approximately "eleven and a half months later," in 2024.  *See* Dkt. No. 48-1 at 5-6.

Mr. Garofalo opened Charred Brick Oven 2020.  Dkt. No. 40-2.  The restaurant "specializes in brick oven pizzas and has a wide selection of specialty 12 [inch] pies," Dkt. No. 40-2, and its menu includes $17 calzones, $15 salads, $20-28 pasta dishes, and $19-24 panini sandwiches.  *See* Dkt. No. 43-2.  Prior to Charred Brick Oven's opening, the same Corporate Defendant that owned Charred Brick Oven, NDL Restaurant Corp., owned and operated a restaurant at the same location on Merrick Road called Lobster Shack.  Dkt. No. 52 at ¶ 14; Dkt. No. 48-1 at 6, 13; Dkt. No. 48-2 at 4.  Lobster Shack closed around 2020.  Dkt. No. 48-1 at 13.

---

[4] Defendants indicate that "shortly after New Year's Day" of 2025, Bongo Burrito was "closed down." Dkt. No. 72 at 3.

[5] Page citations are to the ECF-stamped page numbers.

In 2023, Mr. Garofalo opened Bongo Burrito. Dkt. No. 40-2; Dkt. No. 48-1 at 4. The restaurant serves "Mexican style food," including a $12 loaded nachos, $13 tacos, and $12-18 quesadillas. Dkt. No. 43-1; Dkt. No. 42 at 12. Bongo Burrito's anticipated opening was advertised in a newspaper article profiling Charred Brick Oven and Puglia's (Dkt. No. 40-2) and on Charred Brick Oven's Instagram account, which encouraged viewers to "[f]ollow us along on our newest adventure @bongoburrito." Dkt. No. 40-4. Bongo Burrito also hosted an event called a "Holiday Sip n' Shop [*sic*]" which included raffle baskets containing, *inter alia*, a "$50 Charred Brick Oven Gift Card." Dkt. No. 40-3.

According to Plaintiff, employees of Bongo Burrito would transfer supplies between Bongo Burrito and other restaurants. *See* Dkt. No. 41 at 8; *see also* Dkt. No. 43 at ¶ 13 (noting that supplies were transferred from Charred Brick Oven to Bongo Burrito "on a rare occasion[] when Bongo Burrito might have needed some parsley or onion from Charred [Brick Oven]"). After Bongo Burrito was opened, its basement had "some additional space," which was used "to store pizza boxes for Charred [Brick Oven]." Dkt. No. 43 at ¶ 13. Further, at least one employee of Bongo Burrito worked shifts at other restaurants owned by Mr. Garofalo, including Puglia's, Lobster Shack, and Charred Brick Oven. Dkt. No. 48-2 at 4, 20.

Each of Mr. Garofalo's restaurants were managed by separate individuals and maintained separate bank accounts and operating and payroll expenses. Dkt. No. 43 at ¶¶ 9-11. The restaurants used the same payroll processor, which electronically stored and maintained all employee records. Dkt. No. 48-1 at 4, 6, 11. Additionally, an employee who worked as a manager at Charred Brick Oven processed payrolls for Lobster Shack, Charred Brick Oven, and Bongo Burrito. Dkt. No. 48-1 at 11; Dkt. No. 49-2. A separate employee ("Lynn") processed payroll for Puglia's. Dkt. No. 48-1 at 11.

In acting as the owner of the businesses, Mr. Garofalo maintained a single work email address rather than separate addresses for each restaurant. Dkt. No. 48-1 at 6. Mr. Garofalo controlled the hiring and firing processes for all employees at all restaurants and could modify any employee's shift schedule. Dkt. No. 48-1 at 6. When questions or issues would arise concerning payroll or finances that a restaurant's individual manager could not answer, those inquiries were ultimately directed to Mr. Garofalo, who had the final say. Dkt. No. 48-2 at 7-8.

### ii. Plaintiff's Claims

On or about October 16, 2023, Defendants hired Plaintiff to work as a cook at Bongo Burrito. Dkt. No. 1 at ¶ 29. The Complaint represents that Plaintiff was regularly scheduled to work at Bongo Burrito from 11:00 a.m. to 10:00 p.m.—approximately 11 hours per day—on Mondays through Fridays, totaling 55 hours per week. *Id.* at ¶ 30.

While employed at Bongo Burrito, Plaintiff claims that his salary was fixed at a rate of $1,500 per week regardless of the actual number of hours he worked. *Id.* at ¶ 31. Plaintiff contends that he "was not compensated overtime premium for the hours he worked in excess of forty (40) hours in each workweek" (*id.*), nor were there any agreements that Plaintiff's fixed salary was intended to cover overtime hours that he worked in excess of 40 hours each week. *Id.* at ¶ 32. Despite working shifts that exceeded ten hours, "Plaintiff was not paid any spread of hours premiums." *Id.* at ¶ 33. Moreover, Plaintiff alleges that his wage statements "failed to include [his] regular hourly rate of pay, the overtime rate of pay, the number of regular hours worked, and the number of overtime hours worked" (*id.* at ¶ 34), and that Defendants did not provide "wage notices at hiring and at dates of all wage changes thereafter." *Id.* at ¶ 35.

On or about November 13, 2023, Plaintiff "took sick leave for one day to seek medical attention for his aching back." *Id.* at ¶ 52. Plaintiff's medical provider purportedly injected

Plaintiff with a "Transforaminal Epidural Steroid Injection" that caused "pain and other symptoms. *Id.* Plaintiff was directed by the doctor "to take another day off to recover." *Id.*

Plaintiff alleges that following the instruction by the doctor, he requested an additional day of sick leave for November 14, 2023. *Id.* at ¶ 53. Rather than granting the request, Defendants allegedly terminated his employment on or about November 14, 2023. *Id.* at ¶¶ 29, 54.

Plaintiff is not alleged to have personally worked for Charred Brick Oven or Puglia's.

### iii.    FLSA Collective Plaintiffs[6]

The Complaint contains collective action allegations under Section 16(b) of the FLSA, 29 U.S.C § 216(b), which are "essentially the same" as those made by Plaintiff. *Id.* at ¶ 18. The "FLSA Collective Plaintiffs" seek to comprise "all other non-exempt employee[ ] including but not limited to hosts, waiters, servers, bartenders, barbacks, food runners, bussers, delivery persons, cooks, dishwashers, food preparers, porters, and employees misclassified as exempt employees[ ] employed by Defendants on or after the date that is six years before [December 28, 2023]." *Id.* at ¶ 17.

According to the Complaint, at all relevant times Plaintiff and the FLSA Collective Plaintiffs "were similarly paid on a fixed salary basis [as Plaintiff,] without any overtime premiums for all hours worked over forty (40) each week," and that there were no agreements with Defendants "that their fixed salaries would cover their overtime hours." *Id.* at ¶¶ 31-32. Thus, Defendant's conduct culminated in a "willful failure and refusal to pay them proper overtime premiums at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek, due to fixed salary." *Id.* at ¶ 18.

### B.    Relevant Procedural Background

---

[6] The Complaint additionally includes class action claims against Defendants made pursuant to Federal Rule of Civil Procedure 23, *see* Dkt. No. 1 at ¶¶ 20-28.

Plaintiff filed the Complaint on December 28, 2023. Dkt. No. 1. As part of the filing, Plaintiff consented to becoming a party in a collective action under the FLSA. *See* Dkt. No. 4.

After the initial conference was held before the undersigned on March 25, 2024, the Court set a discovery plan and scheduling order. Minute Entry dated Mar. 25, 2024. Between March 25, 2024 and the filing of this Opinion and Order, the parties have engaged in discovery, raising a host of disputes requiring the Court's intervention. *See, e.g.*, Dkt. Nos. 23-68. At present, discovery remains ongoing as to Bongo Burrito but stayed as to Charred Brick Oven and Puglia's. Minute Entry Dated January 7, 2025.

### C. Plaintiff's Motion to Certify FLSA Collective Action

On October 18, 2024, Plaintiff filed his motion for conditional collective certification for claims under the FLSA on behalf of himself and all current and former covered employees employed by Defendants within the last six years. *See* Dkt. Nos. 38-39. Specifically, Plaintiff requests that the Court: (1) certify the conditional class at this stage because he has met the lenient standard governing conditional certification and notice; (2) approve and expedite the proposed notice (*see* Dkt. No. 40-1) to "similarly situated" employees; and (3) order discovery of the names, addresses, and telephone numbers within ten days of ten days of entry of an order granting his motion. Dkt. No. 39 at 18-25.

Defendants oppose Plaintiff's motion for conditional collective certification. *See* Dkt. Nos. 42-44. Defendant contends that the motion should be denied because Plaintiff is not similarly situated to the proposed members of the proposed FLSA Collective; Charred and Puglia's are not part of an enterprise that employed Plaintiff; and Plaintiff is an exempt employee under the FLSA. *See* Dkt. No. 42 at 4-16. Plaintiff's reply memorandum in support if his motion disputes each of Defendants' responses. *See* Dkt. No. 44.

On October 21, 2024, the Court granted Defendants' request to file a sur-reply.  Text Order dated Oct. 21, 2024.  Defendants address certain alleged misrepresentation made by Plaintiff in his reply memorandum, namely, that Bongo Burrito maintained kitchen staff hours through a physical punch card system, and that Plaintiff was the only employee on a fixed salary.  Dkt. No. 46.

On November 25, 2024, the Court granted Plaintiff's request to file a response to Defendants' October 21, 2024 submission.  Text Order dated Nov. 25, 2024.  Plaintiff's submission, which was filed on November 26, 2024, asserts that deposition testimony "corroborate Plaintiff's sworn statements regarding transferring of employees, shared payroll practices and functions, centralized human resources, common management, common policies, and failure to pay all wages owed as a result of unlawful wage and hour policies."  Dkt. No. 48 at 1.

On December 2, 2024, the Court granted Defendants' request to file a second sur-reply to Plaintiff's November 26, 2024 submission.  Text Order dated Dec. 2, 2024.  Defendants' final submission also points to deposition testimony that they contend refutes the issues raised in Plaintiff's November 26, 2024 submission.  *See* Dkt. No. 49 at 1-5.

### D.    Plaintiff's Motion to Amend the Complaint

On December 5, 2025, Plaintiff filed a motion to amend the Complaint.  *See* Dkt. No. 52.  Plaintiff seeks to add (1) two claims for illegal rounding and time shaving under the FLSA and the NYLL, respectively; (2) two claims for discrimination based on his disability under the ADA, the NYSHRL, and the NYCHRL, respectively; and (3) Lobster Shack, a now-closed restaurant under which Defendant NDL Restaurant Corp. formerly conducted business, as a defendant.  Dkt. No. 52 at 1; *see also* Dkt. No. 52-2.  Plaintiff requests that the Court grant the request because

Defendants would not be prejudiced by amendment, there is no undue delay to the amendment, and that the amendment is not futile.  Dkt. No. 52 at 1-3.

On December 12, 2024, Defendants opposed Plaintiff's motion to amend the Complaint.  *See* Dkt. No. 55.  Defendants argue that the proposed amendment should be denied because each of the added claims are not viable; additionally, Defendants challenged the jurisdictional basis for the NYCHRL claims because "the alleged acts took place outside New York City."  *Id.* at 1-2.  Defendants further contend that Lobster Shack was not part of any enterprise united in interest.  *Id.*

After the Court ordered Plaintiff to respond to the NYCHRL jurisdictional challenge (Text Order dated Dec. 13, 2024), Plaintiff withdrew his request to amend the Complaint to include the NYCHRL claim in the proposed First Amended Complaint.  Dkt. No. 60.

## II.    **Plaintiff's Motion to Certify FLSA Collective Action**

### A.    **Legal Standard**

The FLSA was enacted to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers."  *Carabajo v. APCO Insulation Co. Inc.*, No. 22-CV-04175 (PKC) (SJB), 2023 WL 3931618, at *3 (E.D.N.Y. June 9, 2023) (quoting 29 U.S.C. § 202(a)).  The statute requires employers to pay employees an overtime rate for time worked more than 40 hours in a given work week of "not less than one and one-half times the regular rate at which [they are] employed."  29 U.S.C. § 207.  Section 216(b) of the FLSA provides a private right of action to an employee to recover overtime compensation from an employer who violates the Act's provisions.  *Carabajo*, 2023 WL 3931618, at *3; *Gonzalez v. SBKU Servs. Inc.*, No. 23-CV-08797 (SJB) (SIL), 2025 WL 267977, at *4 (E.D.N.Y. Jan. 22, 2025) ("The FLSA permits employees to maintain a collective

action "for and [o]n behalf of . . . themselves and other employees similarly situated.") (citing 29 U.S.C. § 216(b)).

Under the FLSA, plaintiffs may proceed "for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). This is known as a "collective action." *See Myers v. Hertz Corp.*, 624 F.3d 537, 543 (2d Cir. 2010). "A collective action under the FLSA differs from the typical class action under Rule 23 because a party seeking conditional certification of a collective action need not demonstrate the Rule 23 requirements of numerosity, commonality, typicality, and adequacy of representation." *Aleman-Valdivia v. Top Dog Plumbing & Heating Corp.*, No. 20-CV-421 (LDH) (MMH), 2021 WL 4502479, at *2 (E.D.N.Y. Sept. 30, 2021) (internal citations omitted). Additionally, unlike under a Rule 23 class, members of an FLSA collective action must affirmatively "opt in" to the action. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013) ("Under the FLSA[,] 'conditional certification' does not produce a class with an independent legal status, or join additional parties to the action. The sole consequence of conditional certification is the sending of court-approved written notice to employees . . .") (internal citations omitted); *Carabajo*, 2023 WL 3931618, at *3 (explaining that in a collective action, to join the suit, a person must "give[ ] [their] consent in writing to become such a party" and file that consent "in the court in which such action is brought." ).

Courts in the Second Circuit apply a two-step test to determine whether to approve a "collective action" under the FLSA. *See Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010); *see also Pineda v. Big City Realty Mgmt., LLC*, No. 22-CV-5428 (BMC), 2024 WL 5146068, at *2 (E.D.N.Y. Dec. 17, 2024) ("Although the Second Circuit has reviewed district courts' application of this two-step process for abuse of discretion, *see Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 539 (2d Cir. 2016), and has found the approach "sensible," *Myers*,

10

624 F.3d at 552, it has not formally adopted a specific test for conditional approval of an FLSA collective action.") (citations and quotation marks omitted).

The first step involves "an initial determination to send notice to potential opt-in plaintiffs who may be similarly situated to the named plaintiffs with respect to whether a FLSA violation has occurred." *Myers*, 624 F.3d at 555. The first step, generally termed as "conditional certification,"[7] which is at issue here, "generally takes place before any significant discovery"; certification imposes merely a "minimal burden" on the plaintiff and is satisfied by a showing that the purported class members are "similarly situated." *Puglisi v. TD Bank, N.A.*, 998 F. Supp. 2d 95, 99 (E.D.N.Y. 2014). The analysis requires a "modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." *Myers*, 624 F.3d at 555 (internal quotation marks omitted). If the Court grants conditional certification to proceed as a collective action, putative collective action members may "opt in" to the action. *Rafter v. Everlast Sign & Serv. Inc.*, No. 21-CV-4588 (NRM) (LGD), 2023 WL 7687261, at *4 (E.D.N.Y. Apr. 13, 2023).

"The second step of the collective action inquiry typically follows the completion of discovery and requires the court to examine the evidentiary record to determine whether the opt-in plaintiffs are, in fact, similarly situated." *Aleman-Valdivia*, 2021 WL 4502479, at *2 (citing *Bifulco v. Mortg. Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009)); *see also Myers*, 624 F.3d at

---

[7] As the Second Circuit noted in *Myers*, "while courts speak of 'certifying' a FLSA collective action, it is important to stress that the 'certification' we refer to here is only the district court's exercise of the discretionary power, upheld in [*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)], to facilitate the sending of notice to potential class members. Section 216(b) does not by its terms require any such device, and nothing in the text of the statute prevents plaintiffs from opting in to the action by filing consents with the district court, even when the notice described in *Hoffmann-La Roche* has not been sent, so long as such plaintiffs are 'similarly situated' to the named individual plaintiff who brought the action." *Myers*, 624 F.3d at 555. "Thus 'certification' is neither necessary nor sufficient for the existence of a representative action under FLSA, but may be a useful 'case management' tool for district courts to employ in 'appropriate cases.'" *Id.* (citing *Hoffmann-La Roche*, 493 U.S. at 169, 174).

555 (explaining that the second step involves an evaluation "on a fuller record . . . whether a so-called collective action may go forward by determining whether the plaintiffs who have opted in are in fact similarly situated to the named plaintiffs."). If the court determines that the opt-in plaintiffs are not in fact similarly situated, the class is decertified, and the opt-in plaintiffs' claims are dismissed without prejudice. *Aleman-Valdivia*, 2021 WL 4502479, at *2 (citations omitted).

"In considering the first step, Plaintiffs must make 'a modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law.'" *Hunter v. Next Level Burger Co., Inc.*, No. 23-CV-03483 (HG), 2024 WL 686929, at *2 (E.D.N.Y. Feb. 20, 2024) (quoting *Myers*, 624 F.3d at 555). Plaintiffs are "not required to show an actual FLSA violation at this stage, but rather only that a factual nexus exists between the plaintiff's situation and the situation of other potential plaintiffs." *Calderon v. King Umberto, Inc.*, 892 F. Supp. 2d 456, 459 (E.D.N.Y. 2012) (internal quotation marks omitted). "In making this showing, nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan is required." *Zaldivar v. JMJ Caterers, Inc.*, 166 F. Supp. 3d 310, 317 (E.D.N.Y. 2016) (internal citations omitted). Documents that may be considered to establish such a showing include "plaintiffs' own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members." *Chicas v. Kelco Constr., Inc.*, No. 21-CV-09014 (PAE) (SDA), 2023 WL 2072026, at *2-3 (S.D.N.Y. Feb. 19, 2023).

"When applying this lenient evidentiary standard, a court evaluates pleadings and affidavits, but does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Singh v. Anmol Food Mart, Inc.*, No. 22-CV-5475 (RER) (JAM), 2024 WL 308241, at *2 (E.D.N.Y. Jan. 26, 2024); *see also Lynch v. U.S. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) ("At this procedural stage, the court does not

resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations. Indeed, a court should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated."). "[T]he focus of the inquiry is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated . . . with respect to their allegations that the law has been violated." *Romero v. La Revise Assocs., LLC*, 968 F. Supp. 2d 639, 645 (S.D.N.Y. 2013). Thus, where the papers present ambiguities, the Court draws "all inferences in favor of the plaintiff at the preliminary certification stage." *See Jeong Woo Kim v. 511 E. 5th St., LLC*, 985 F. Supp. 2d 439, 446 (S.D.N.Y. 2013) (quotations omitted).

In determining whether members of an action are similarly situated, "district courts typically review several factors, including (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *McGlone v. Contract Callers, Inc.*, 49 F. Supp. 3d 364, 367 (S.D.N.Y. 2014) (citation omitted); *Wilk*, 724 F. Supp. 3d at 85.

### B.    Conditional Certification

Here, the Court finds that Plaintiff has made a "modest factual showing" sufficient to grant conditional certification of a collective as to potential opt-in class members employed by Bongo Burrito and Charred Brick Oven. The Court, however, finds that Plaintiff has not met his burden with respect to conditional certification of a collective as to potential opt-in class members employed by Puglia's. *See Qing Gu v. T.C. Chikurin, Inc.*, No. 13-CV-2322 (SJ) (MDG), 2014 WL 1515877, at *4 (E.D.N.Y. Apr. 17, 2014) ("Absent further explanation or information from plaintiffs, this Court cannot find that all of these employees are similarly situated to plaintiff[ ].").

13

i.      **Defendants' Status as a Single Employer Under the FLSA**

Plaintiff seeks conditional certification for members that worked at entities distinct from his direct employer, i.e. employees that were employed by Charred Brick Oven or Puglia's rather than Bongo Burrito.  *See* Dkt. No. 39 at 7.  Plaintiff must therefore show that the restaurants employing the putative collective members can be treated as a single "employer" under the FLSA by establishing that they operate as a "single integrated enterprise."  *Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 370-71 (S.D.N.Y. 2014) (Nathan, J.); *Lamb v. Singh Hosp. Grp., Inc.*, No. 11-CV-6060 (MKB), 2013 WL 5502844, at \*9 (E.D.N.Y. Sept. 30, 2013).

"District courts have applied the single integrated enterprise test to assess whether a group of distinct but closely affiliated entities should be treated as a single employer for FLSA purposes." *Mangahas v. Eight Oranges Inc.*, No. 22-CV-4150 (LJL), 2024 WL 4555669, at \*6 (S.D.N.Y. Oct. 22, 2024) (citations omitted).  "To determine whether multiple defendants constitute a single employer, courts consider the following factors: (1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control."  *Id.* (citing, *inter alia*, *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240 (2d Cir. 1995)); *see also Huer Huang v. Shanghai City Corp.*, 459 F. Supp. 3d 580, 586 (S.D.N.Y. 2020); *Juarez*, 29 F. Supp. 3d at 371; *Lamb*, 2013 WL 5502844, at \*9.

"'In the FLSA context, facts that go to the existence of a single, integrated enterprise include common decor, name, menu and marketing; the use of the same employees at multiple locations; the transfer of items between restaurants; use of the same central payroll office, common storage space and leases; and the distribution of common employee guidelines and procedures across different businesses.'"  *Flores v. 201 W. 103 Corp.*, 256 F. Supp. 3d 433, 442 (S.D.N.Y. 2017) (quoting *Khereed v. W. 12th St. Rest. Grp. LLC*, No. 15-CV-1363 (PKC), 2016 WL 590233,

14

at *4 (S.D.N.Y. Feb. 11, 2016) (collecting cases))).    "'Although no one factor is determinative . . . control of labor relations is the central concern.'"  *Mangahas*, 2024 WL 4555669, at *6 (quoting *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996)).  "Where the single integrated enterprise theory applies, courts may impose liability for a violation 'not only on the nominal employer but also on another entity comprising part of the single integrated employer."  *Huer Huang*, 459 F. Supp. 3d at 586 (quoting *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005)).

The Court evaluates single-integrated-enterprise status with the same pleading standard as the motion underlying the request.  *See, e.g.*, *Cuaya v. VI Dev. Grp., LLC*, No. 19-CV-4290 (JLC), 2020 WL 5494371, at *7 (S.D.N.Y. Sept. 10, 2020) (finding the defendants were a single integrated enterprise at the conditional certification stage where the plaintiff made an "adequate factual showing"); *Chen v. 2425 Broadway Chao Rest., LLC*, No. 1:16-CV-5735 (GHW), 2017 WL 2600051, at *7 (S.D.N.Y. June 15, 2017) (evaluating claim based on motion to dismiss standard).  "[W]hen disputes arise as to the single enterprise status of defendants at the conditional certification stage, courts generally defer the analysis to the second stage of certification, as it is a complicated and fact-specific inquiry, which is not properly determined at the collective action certification stage."  *Cuaya v. VI Dev. Grp., LLC*, No. 19-CV-4290 (JLC), 2020 WL 5494371, at *7 (S.D.N.Y. Sept. 10, 2020) (citing *Lijun Geng v. Shu Han Ju Rest. II Corp.*, No. 18-CV-12220 (PAE) (RWL), 2019 WL 4493429, at *7 (S.D.N.Y. Sept. 9, 2019)) (quotations omitted).  Where "a plaintiff makes an adequate factual showing to support the inference that separate locations act as a single integrated enterprise, courts in this Circuit routinely reject allegations in defendants' affidavits as a basis for denying collective action certification."  *Id.* (quotations and citations omitted); *see also Cruz v. Ham N Eggery Inc.*, No. 15-CV-3228 (JBW) (MDG), 2016 WL

4186967, at *3 (E.D.N.Y. Aug. 8, 2016) (collecting cases).

a.    **Bongo Burrito and Charred Brick Oven**

Here, at this stage of the litigation and in light of the current standard of review in evaluating Plaintiff's motion, Plaintiff adequately pleads that Defendants Bongo Burrito and Charred Brick Oven are a single integrated enterprise for the purposes of conditional certification. First, Plaintiff has shown that Bongo Burrito and Charred Brick Oven's operations were interrelated. Plaintiff contends that supplies were transferred between the restaurants. Dkt. No. 41 at 8; Dkt. No. 43 at ¶ 13 (Mr. Garofalo noting that, on "a rare occasion," "parsley or onions" might be transferred from Charred Brick Oven to Bongo Burrito). A former employee testified that he worked shifts as needed at the Charred Brick Oven and its predecessor, Lobster Shack. Dkt. No. 48-2 at 4, 20. Mr. Garofalo concedes that additional space in the basement of Bongo Burrito was used "to store pizza boxes" for Charred Brick Oven. Dkt. No. 43 at ¶ 13.

Plaintiff alleges that the advertisements and marketing that promoted the restaurants were interrelated. Charred Brick Oven's Instagram account posted a promotion for Bongo Burrito's anticipated opening, beckoning viewers to "[f]ollow us along on our newest adventure @bongoburrito[.]" Dkt. No. 40-3. Bongo Burrito hosted a "Holiday Sip n' Shop" that included raffle baskets with a "$50 Charred Brick Oven Gift Card." Dkt. No. 40-3. The newspaper advertisement profiling Charred Brick Oven also teased the opening of Bongo Burrito, explicitly naming Mr. Garofalo as the owner of the two restaurants. Dkt. No. 40-2.

Plaintiff further alleges that there was centralized control of labor relations and common management amongst Bongo Burrito and Charred Brick Oven. All employment records for employees across the restaurants, including those regarding payroll and timekeeping, were stored and maintained through the same payroll processor. Dkt. No. 48-1 at 4, 6, 11. Although the

16

restaurants had separate managers (Dkt. No. 43 at ¶¶ 9-11), Mr. Garofalo explained that the manager for Charred Brick Oven also processed payrolls for Bongo Burrito, to which the manager corroborated through her declaration.  Dkt. No. 48-1 at 11; Dkt. No. 49-2.  Furthermore, questions concerning payroll or finances were directed toward Mr. Garofalo—who maintained a single work email—if one of the managers could not provide an answer.  Dkt. No. 48-2 at 7-8.

Moreover, Plaintiff has pled that Bongo Burrito and Charred Brick Oven were subject to common ownership and financial control.  Mr. Garofalo owned both restaurants.  Dkt. No. 1 at ¶ 9.  Mr. Garofalo testified that he had the ability to hire and fire all employees of all restaurants.  Dkt. No. 48-1 at 6.  Mr. Garofalo also explained that he could modify any employee's shift schedule at will.  *Id.*  Finally, Mr. Garofalo made ultimate decisions concerning an employee's payroll and finances.  Dkt. No. 48-2 at 7-8.

At bottom, Plaintiff has met his burden of a "modest factual showing" that Bongo Burrito and Charred Brick Oven had interrelated operations sufficient to show that they operated as a single integrated enterprise for purposes of conditional certification of a collective.  *See, e.g.*, *Flores*, 256 F. Supp. 3d at 442 ("facts that go to the existence of a single, integrated enterprise include common decor, name, menu and marketing; the use of the same employees at multiple locations; the transfer of items between restaurants; use of the same central payroll office, common storage space and leases; and the distribution of common employee guidelines and procedures across different businesses").  Accordingly, Plaintiff has sufficiently pled that Bongo Burrito and Charred Brick Oven conducted business as a single integrated enterprise, thus rendering them as a single employer under the FLSA, warranting conditional certification.  *See Cuaya*, 202 WL 5494371, at *7 (finding the plaintiff established a single enterprise for purposes of conditional certification); *Cruz*, 2016 WL 4186967, at *3 (same); *cf. Juarez*, 29 F. Supp. 3d at 367-68 (finding

similar allegations sufficient on different procedural posture); *Bravo v. Established Burger One, LLC*, No. 12-CV-9044 (CM), 2013 WL 5549495, at *8 (S.D.N.Y. Oct. 8, 2013) (same).[8]

### b.    Bongo Burrito and Puglia's

The Court, however, denies Plaintiff's request with respect to whether Bongo Burrito and Puglia's operated as a single integrated enterprise. In short, Plaintiff fails to meet his burden in showing that Puglia's operations significantly interrelate with Bongo Burrito and Charred Brick Oven. *See Apolinar v. R.J. 49 REST., LLC*, No. 15-CV-8655 (KBF), 2016 WL 2903278, at *4 (S.D.N.Y. May 18, 2016). Plaintiff provides no evidence that Puglia's engaged in marketing and promotion for Bongo Burritos or Charred Brick Oven. Nor does Plaintiff make any assertions or provide any documentary evidence that supplies were transferred amongst the restaurants or that there was storage within Puglia's that was common to Bongo Burritos, or, for that matter, Charred Brick Oven.

Additionally, Plaintiff fails to plead centralized control of labor relations and common management to the same degree for Puglia's as he does for Bongo Burrito and Charred Brick Oven. The employee who managed Puglia's payroll processing was different from the employee who managed Bongo Burrito and Charred Brick Oven. *See* Dkt. No. 48-1 at 11. This separation from the other restaurants bolsters a finding that Plaintiff has failed to show Puglia's is sufficiently intertwined with Bongo Burrito or Charred Brick Oven to constitute a single integrated enterprise, especially given that it maintained a separate bank accounts and operating and payroll expenses. Dkt. No. 43 at ¶¶ 9-11.

---

[8]  Although Defendants contend that Bongo Burrito has since "closed down" since the filing of this lawsuit (Dkt. No. 72 at 3), Courts have nonetheless granted conditional certification for employees who worked at the restaurant while it was open. *See, e.g.*, *Guanglei Jiao v. Shang Shang Qian Inc.*, No. 18-CV0-5624 (DG) (VMS), 2021 WL 4356043, at *1 (E.D.N.Y. Sept. 24, 2021) (certifying FLSA collective of employees at restaurant that was "defunct" after filing of the suit); *Sarikaputar v. Veratip Corp.*, No. 17-CV-00814 (ALC) (SDA), 2018 WL 4109348, at *6 (S.D.N.Y. Aug. 29, 2018) (same).

"Though Plaintiff's burden is modest, this Court cannot justify conditionally certifying a class of plaintiffs across all of the Defendant's locations given the sparse evidence of common control of workers and common policies that violate the FLSA." *Delijanin v. Wolfgang's Steakhouse Inc.*, No. 18-CV-7854 (RA) (KHP), 2019 WL 1760154, at *8 (S.D.N.Y. Apr. 22, 2019). Plaintiff has also not shown that Puglia's—characterized as an "upscale restaurant" (Dkt. No. 42 at 12)—shares those common hallmarks that would suggest it falls within a single integrated enterprise with Bongo Burrito and Charred Brick Oven. *See Mangahas*, 2024 WL 4555669, at *7 (focusing on facts including "common decor, name, menu and marketing; the use of the same employees at multiple locations; the transfer of items between restaurants; use of the same central payroll office, common storage space and leases; and the distribution of common employee guidelines and procedures across different businesses."); *Khereed*, 2016 WL 590233, at *4 (same); *Juarez* 29 F. Supp. 3d at 367-68 (same).

Accordingly, only Bongo Burrito and Charred Brick Oven constitute a single integrated enterprise for the purposes of single employer status under the FLSA for conditional certification.

### c.    Defendants' Argument

Defendants dispute Plaintiff's assertion that they constitute a single employer. As an initial note, the Court rejects Defendants' contention that they are not joint employers as a basis for denying Plaintiff's motion. *See Cruz*, 2016 WL 418697, at *3 (collecting cases holding same); *Cuaya*, 2020 WL 5494371, at *7 (rejecting allegations in defendants' affidavits attempting to undermine single integrated enterprise status as a basis for denying conditional certification). Because the Court at this stage only evaluates pleadings and affidavits without ruling on factual disputes, substantive issues going to the ultimate merits, or credibility determinations, *Singh*, 2024 WL 308241, at *2, the Court will not "'prejudge defendants' status as an employer' since it is a

19

'contested area of fact requiring discovery' and not a basis for denying conditional certification." *Hernandez v. Immortal Rise, Inc.*, No. 11-CV-4360 (RRM) (LB), 2012 WL 4369746, at *5 (E.D.N.Y. Sept. 24, 2012) (quoting *Lujan v. Cabana Mgmt., Inc.*, No. 10-CV-755 (ILG), 2011 WL 317984, at *6 (E.D.N.Y. Feb. 1, 2011)); *see also Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 307-08 (S.D.N.Y. 1998) (Sotomayor, J.) (certifying collective of fifteen employees over the defendants objection that they were separate establishments).  As stated above, Plaintiff has met his minimum burden of pleading that Bongo Burrito and Charred Brick Oven are a single employer under the FLSA for purposes of conditional certification.

Furthermore, Defendants rely on a number of distinguishable cases in support of their argument.  *See* Dkt. No. 42 at 7-12.  For example, in *Espinoza v. La Oficina Bar Corporation* the Court found the plaintiff's allegations in his motion for default judgment "vague," "conclusory, and "insufficient" to establish single employer status under the FLSA where "entirely absent in [the] case [were] the common hallmarks of a single integrated enterprise amongst restaurants, such as using the same menu, joint advertising and marketing, and common pay policies."  No. 20-CV-1237 (MKB), 2022 WL 987429, at *12-*13 (E.D.N.Y. Mar. 1, 2022), *report and recommendation adopted as modified*, 2022 WL 985836 (E.D.N.Y. Mar. 31, 2022).  Here, Plaintiff's motion is on distinct procedural posture governed by a "lenient evidentiary standard," *Singh*, 2024 WL 308241, at *2, and, unlike in *Espinoza*, is supported by Plaintiff's pleadings.

Defendants' citation to *Huer Huang* fares no better, as that case involved motions filed pursuant to Rule 12 where multiple restaurants had different owners, and the pleaded facts undercut the plaintiffs' allegations.  *See* 459 F. Supp. 3d at 589 (explaining discrepancies between the allegations and the factual pleadings).  Here, in contrast, Plaintiff's allegations are bolstered by the supporting pleadings and affidavits, which passes muster under the standard of review that

governs this phase of the proceedings.

Finally, *Robles v. Argonaut Restaurant & Diner, Inc.* addressed a partial motion for summary judgment where the plaintiff failed to establish "beyond a genuine factual dispute that there [was] 'operational independence' between the two establishments" at issue by relying on conclusory allegations.  No. 5-CV-5553 (JSR), 2009 WL 3320858, at *2 (S.D.N.Y. Oct. 9, 2009).  But the standard for summary judgment does not apply here, as the Court cannot "resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations."  *See Singh*, 2024 WL 308241, at *2.  Because Plaintiff has met the "minimal burden" necessary to proceed concerning to conditional certification of employees who worked at Bongo Burrito and Charred Brick Oven, *see, e.g.*, *Cruz*, 2016 WL 418697, at *3; *Cuaya*, 2020 WL 5494371, at *7; *Hernandez*, 2012 WL 4369746, at *5; *Lujan*, 2011 WL 317984, at *6; *Realite*, 7 F. Supp. 2d at 308, the Court finds that Plaintiff has sufficiently alleged that Bongo Burrito and Charred Brick Oven (and, in turn, their corporate owners) are a single integrated enterprise to be considered a single employer under the FLSA.

### ii.    Conditional Certification of the FLSA Collective

At the first step of the collective action process, although the burden is minimal, "courts have held that plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law."  *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (Sotomayor, J.) ("[T]he purpose of this first stage is merely to determine whether 'similarly situated' plaintiffs do in fact exist.").  Key to this showing is whether Plaintiff "provide[s] actual evidence of a factual nexus between [his] situation and those that [he] claim are similarly situated rather than mere conclusory allegations."  *Carabajo*, 2023 WL 3931618, at *3 (quoting *Qing Gu*

*v. T.C. Chikurin, Inc.*, No. 13-CV-2322, 2014 WL 1515877, at *3 (E.D.N.Y. Apr. 17, 2014)).  At the conditional certification stage, "the burden is so low that even one or two affidavits establishing the common plan may suffice." *Jeong Woo Kim*, 985 F. Supp. 2d at 445-46.

Here, Plaintiff has made a sufficient showing for conditional certification with respect to Bongo Burrito and Charred Brick Oven.  Plaintiff seeks conditional certification of a collective class of "all current and former employees, including hosts, waiters, servers, bartenders, barbacks, food runners, bussers, delivery persons, cooks, dishwashers, food preparers, and porters employed by Defendants" within six years of December 28, 2023.  *See* Dkt. No. 39 at 7.  Plaintiff contends that he "was hired to work as a cook for [Bongo Burrito]," including duties and responsibilities such as "preparing ingredients, cooking food, and garnishing dishes" and "clean[ing] and maintain[ing] the kitchen, monitor[ing] food supply, accept[ing] and unload[ing] deliveries, stor[ing] and organiz[ing] deliveries in the basement, and stock[ing] inventory and supplies." Dkt. No. 41 at 9.  Plaintiff claims that he was paid "at a fixed salary of $1,500 per week for all hours worked" without overtime premiums despite no agreement with Defendants that such salary was to cover overtime hours.  *Id.* 9-10.  Plaintiff further alleges that he "did not receive a wage notice" or proper wage statements that included overtime premiums or spread of hours premiums.  *Id.* at 11.

Plaintiff identifies eight other individuals employed by Bongo Burrito and Charred Brick Oven, consisting of four cooks, a food preparer, and three dishwashers. Dkt. No. 41 at 8.  Plaintiff asserts that he "regularly spoke" about wages with these individuals, each of whom were also paid on a fixed salary without overtime premiums, wage notices, or proper wage statements.  *Id.* at 8-11.  Each of these individuals performed similar duties to Plaintiff, worked similar hours and schedules, and transferred supplies between the restaurants "on top of [their] regular duties

working in the kitchen," which "was a lot of hard physical work." *Id.* Plaintiff attests to these statements based on his work experiences, personal observations, and conversations with these individuals on days where the employees were paid. *Id.*

Plaintiff has therefore established—at least for the purposes of this motion—that while employed by Defendants, he and other similarly situated employees were subject to policies in violation of the FLSA: the failure to receive overtime premiums for hours worked in excess of forty hours per week at a rate of at least one and one-half times the regular rate. *See* 29 U.S.C. § 207(a)(1). Plaintiff's affidavit establishes a "factual nexus" between his claims and those of other employees under the lenient certification standard. *See Cooke*, 722 F. Supp. 3d at 138 (finding similar circumstances sufficient to warrant conditional certification); *Santiago v. Cuisine By Claudette, LLC*, No. 23-CV-2675 (OEM) (JAM), 2023 WL 8003323, at *3 (E.D.N.Y. Nov. 17, 2023) (quoting *Jibowu v. Target Corp.*, 492 F. Supp. 3d 87, 122 (E.D.N.Y. 2020)) (same); *see also Miranda v. Gen. Auto Body Works, Inc.*, No. 17-CV-04116 (AMD) (RER), 2017 WL 4712218, at *2 (E.D.N.Y. Oct. 18, 2017) (collecting cases where a single affidavit by the plaintiff is sufficient to meet the standard at the conditional certification stage).

In opposition to Plaintiff's motion, Defendants first claim that Plaintiff's assertions lack detail, as he "fails to state exactly what his kitchen staff actually told to him, who specifically told it to him, and when and where it was told to him." Dkt. No. 42 at 6. But contrary to Defendants' assertions, Plaintiff is not required to specifically state that a detailed conversation took place between specific employees in order to meet his burden. *See Hunter*, 2024 WL 686929, at *2 (finding that a plaintiff's supported and corroborated observations were sufficient at the first state of conditional certification). To conditionally certify a collective action, "the burden is so low that even one or two affidavits establishing the common plan may suffice." *Kim*, 985 F. Supp. 2d at

445–46.  The burden remains the same even when a supporting declaration is "somewhat thin on details."  *Lubas v. JLS Grp., Inc.*, No. 18-CV-6611 (KAM) (SJB), 2020 WL 4210754, at *7 (E.D.N.Y. July 22, 2020) ("such proof is sufficient to meet the low factual threshold for FLSA collective certification"); *see also Placinta v. Grazina Pilka, Inc.*, No. 16-CV-4272 (KAM)(SJB), 2018 WL 5024170, at *9, *14 (E.D.N.Y. Oct. 5, 2018) (granting motion for conditional certification where there were multiple affidavits corroborating plaintiffs' statements even though the factual record proffered was "ultimately quite thin on facts").

Indeed, courts in this Circuit have conditionally certified FLSA collectives based only on a plaintiff's detailed affidavit about his working conditions and those of his colleagues.  *Miranda*, 2017 WL 4712218, at *2 ("[T]here are numerous examples of courts in this Circuit granting conditional certification based on the pleadings and a single affidavit by the plaintiff."); *Hernandez v. Bare Burger Dio Inc.*, No. 12-CV-7794 (RWS), 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013) ("[C]ourts in this circuit have routinely granted conditional collective certification based solely on the personal observations of one plaintiff's affidavit.") (collecting cases); *see also Yi Mei Ke v. JR Sushi 2 Inc.*, No. 19-CV-7332 (PAE) (BCM), 2021 WL 148751, at *8 (S.D.N.Y. Jan. 15, 2021) (certifying collective based on plaintiff's two affidavits that "adequately described conversations with other employees of JR Sushi concerning their wages"), *aff'd*, 2021 WL 465359, at *3 (Feb. 9, 2021).

"Because the standard at the first stage is 'fairly lenient,' courts applying it 'typically grant[] conditional certification.'"  *Amador v. Morgan Stanley & Co.*, No. 11-CV-4326 (RJS), 2013 WL 494020, at *3 (S.D.N.Y. Feb. 7, 2013) (alteration in original) (quoting *Malloy v. Richard Fleischman & Assocs. Inc.*, No. 09-CV-332 (CM), 2009 WL 1585979, at *2 (S.D.N.Y. June 3, 2009)).  Because Plaintiff has made the requisite initial showing, he is entitled to conditional

certification, and a court may "authorize a[ ] FLSA plaintiff to provide written notice to potential plaintiffs of their right to join in the action." *Gortat v. Capala Bros.*, No. 07-CV-3629, 2009 WL 3347091, at *8 (E.D.N.Y. Oct. 16, 2009), *report and recommendation adopted*, 2010 WL 1423018, at *1 (Apr. 9, 2010), *aff'd*, 568 F. App'x 78, 79 (2d Cir. 2014).

Defendants further allege that Plaintiff is an employee that is exempt from the relevant provisions of the FLSA. *See* Dkt. No. 42 at 13. Defendants contend that the FLSA provisions do not apply to Plaintiff because he was an "executive" that "primarily perfom[ed] management duties during his time at Bongo Burrito" as a "creative professional." *Id.* at 13, 15-16. Specifically, Defendants' point to Plaintiff's duties that included overseeing kitchen staff consisting of two to four other employees, managing the food stock and items that needed to be ordered and restocked, and preparing "alternatives to the menu that Greg Garofalo tested (*id.* at 15-16), as well as his biography at his current place of employment. *Id.* at 16.

Defendants' contentions are inapposite at this stage of the litigation. The submissions amount to attacks on the credibility of Plaintiff's factual assertions—considerations that are outside the Court's current standard of review for Plaintiff's motion. *See Singh*, 2024 WL 308241, at *2 ("When applying this lenient evidentiary standard, a court evaluates pleadings and affidavits, but does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations"); *see also Liu v. Millenium Motor Sports*, LLC, No. 17-CV-6438 (ARR) (RER), 2018 WL 11417745, at *2 (E.D.N.Y. Dec. 13, 2018) (same). The Court will not delve into matters that are outside the scope of this motion. But even if the Court were to reach the merits of Defendants' argument with this respect, declaration and deposition testimony submitted by Defendants undermine their position. *See, e.g.,* Dkt. No. 43 at ¶¶ 17, 21 (explaining managerial duties Plaintiff would have assumed "had [he] stayed longer"); Dkt. No. 47-1 at 9

(indicating Mr. Garofalo was not aware of the requirements of exempt employee status under the FLSA); Dkt. No. 47-2 at 7, 14 (suggesting that Plaintiff was a line cook and that all cooks in the kitchen could contribute to the menu).

Defendants further assert that only Plaintiff was on a fixed salary, and that all other kitchen working at Bongo Burrito were paid overtime wages. Dkt. No. 46 at 2. In support of their position, Defendants attached payroll record documents for various employees spanning from June 30, 2023 to June 28, 2024. *See generally* Dkt. No. 46-1. The payroll records, however, show there were multiple instances where Defendants undercompensated employees for the hours they worked. *See* Dkt. No. 48 (exhibiting records where employees were not properly compensated for time periods in a work week spanning from 1.52 hours to 6.38 hours). Such exhibits, offered by Defendants, bolster Plaintiff's allegations and pleadings that Defendants' policies violated the FLSA sufficient to warrant conditional certification at this stage. *See Hunter*, 2024 WL 686929, at *2 (requiring a plaintiff to make a "modest factual showing that they and potential opt-in plaintiffs" were victims of a common policy or plan that violated the law); *Jeong Woo Kim*, 985 F. Supp. 2d at 446 (drawing all inferences in favor of the plaintiff at conditional certification).

Accordingly, Plaintiff has sufficiently plead the possibility of a similarly situated collective of employees that were employed by Defendants Bongo Burrito and Charred Brick Oven. Therefore, conditional certification is granted with respect to Defendants Bongo Burrito and Charred Brick Oven.

### C.    Notice Period

Plaintiff requests that early, expedited notice be sent to all similarly situated employees within ten days of the order to all covered employees "employed by Defendants at any point in the six years prior to the entry of the order." Dkt. No. 39 at 15-16, 23. Defendants, despite being

granted leave to file two sur-replies, raise no issue as to the distribution of the proposed notice or notice period.  The Court grants Plaintiff's request in part and denies his request in part.

Although § 216(b) does not "expressly provide for court-authorized notice to potential opt-in plaintiffs in a collective action, 'it is well settled' that district courts have the power to authorize an FLSA plaintiff to send such notice."  *Damassia v. Duane Reade, Inc.*, No. 04-CV-8819 (GEL), 2006 WL 2853971, at *2 (S.D.N.Y. Oct. 5, 2006) (quoting *Hoffmann*, 982 F. Supp. at 260).  The FLSA, however, does not contain a certification requirement; "[o]rders authorizing notice are often referred to as order 'certifying' a collective class."  *Id*. at 2 (citing *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006)).  "[C]ourts maintain discretion to craft appropriate notices that effectuate the overarching policies of the collective suit provisions and provide employees with accurate and timely notice concerning the pendency of the action, so that they can make informed decisions about whether to participate."  *Hernandez v. Immortal Rise, Inc.*, No. 11-CV-4360 (RRM) (LB), 2012 WL 4369746, at *6 (E.D.N.Y. 2012) (internal quotation marks omitted) (citing *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007)).

The statute of limitations for a FLSA violation is two years, except when the violations are willful, in which case the statute of limitations is extended to three years. 29 U.S.C. § 255(a). Plaintiff alleges willful conduct against Defendants.  *See, e.g.*, Dkt. No. 1 at ¶¶ 18, 39, 50, 61, 64-65, 69-70, 72-73, 76, 83, 86-87.  "At the conditional certification stage, allegations of willful conduct are sufficient to apply the three-year statute of limitations for purposes of certifying the class."  *Jie Zhang v. Wen Mei, Inc.*, No. 14-CV-1647 (JS) (SIL), 2015 WL 6442545, at *5 (E.D.N.Y. Oct. 23, 2015); *see also Patton* 364 F. Supp. at 268 n. 2 (finding allegation of willful violation justified notice based on a three-year statute of limitations period). "As the Complaint contains allegations of willful conduct by Defendants, the Court finds it appropriate to apply the

three-year statute of limitations under the FLSA at this stage of the proceedings." *Valerio v. RNC Indus.*, LLC, 314 F.R.D. 61, 74 (E.D.N.Y. 2016).

Indeed, the Court notes that the recent trend "is to 'approve three-year notice periods to avoid the confusion caused by notifying plaintiffs who potentially have two disparate claims with different statutes of limitations, along with the inefficiency of providing notice to plaintiffs whose claims may well be time-barred.'" *Gurrieri v. County of Nassau*, No. 16-CV-6983 (ADS) (SIL), 2019 WL 2233830, at *8 (E.D.N.Y. May 23, 2019) (quoting *Mongiove v. Nate's Corp.*, No. 15-CV-1024 (NGG) (RML), 2016 WL 590460, at *6 (E.D.N.Y. Feb. 11, 2016)); *McBeth v. Gabrielli Truck Sales, Ltd.*, 768 F. Supp. 2d 396, 400 (E.D.N.Y. 2011) ("[W]hile '[n]otice to all former employees, going back six years, has been authorized where plaintiffs seek relief under both the FLSA and the New York Labor Law,' the growing trend in this district appears to be limiting the notice period to three years." (citations omitted)).  As some district courts have noted, "[i]t would be confusing to employees who are ineligible for the FLSA opt-in [collective] to receive the opt-in notice, which does not relate to any state law claims.  Further, while a class for the state law claims may someday be certified, it is an opt-out, not an opt-in, class, so there is no danger of claim lapse." *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 668 (S.D.N.Y. 2013).

As to whether a two-year or three-year notice should apply under FLSA, "at the conditional certification stage, a plaintiff need not provide evidence sufficient to establish willfulness in order for the three-year period to be utilized for notification purposes." *Slamna v. API Rest. Corp.*, No. 12-CV-757, 2013 WL 3340290, at *4 (S.D.N.Y. July 2, 2013).  "If appropriate, this Court can revisit any statute of limitations questions at a later stage." *Raimundi v. Astellas U.S. LLC*, No. 10-CV-5240, 2011 WL 5117030, at *2 (S.D.N.Y. Oct. 27, 2011).  As a result, at this stage, it is appropriate to permit conditional certification for a three-year period.  Should Plaintiff fail to

demonstrate that Defendants acted willfully, employee claims can be limited.

The three-year period solely for notice purposes should commence from the date of the filing of the Complaint looking backwards and not the date of this Court's order through the present. *See*, *e.g.*, *Raimundi*, 2011 WL 5117030, at *2 (granting a notice period from three years prior to the filing of the Complaint through the entry of the Court's order granting conditional certification); *Lubas v. JLS Grp., Inc.*, 2020 WL 4210754, at *12 (same); *Carabajo*, 2023 WL 3931618, at *9 (same).

Plaintiff, however, presents no argument as to why the notice period should extend to the six years as he requests. Although Plaintiff cites a few cases granting six-year notice periods, *see* Dkt. No 39 at 14-15, he fails to show *why* a six-year period here is warranted. Courts in this Circuit have granted six-year notice periods where it furthers "the economy of providing notice to plaintiffs with FLSA claims who may also have NYLL claims subject to a six-year statute of limitations." *See Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 563 (S.D.N.Y. 2013) (collecting cases). In contrast, a three-year period is more appropriate where a notice may cause confusion by notifying plaintiffs who may have disparate claims with different statute of limitations in addition to the inefficiency of notifying plaintiffs that may have time-barred claims. *See e.g.*, *Hamadou*, 915 F. Supp. 2d at 667-68.

Here, a three-year period furthers the interest of this action, as the instant motion before the Court is only one for conditional certification of a FLSA collective, rather than one for class certification under Rule 23 for the NYLL claims. *See Trinidad*, 962 F. Supp. 2d at 564; *Lujan v. Cabana Mgmt., Inc.*, No. 10-CV-755 (ILG), 2011 WL 317984, at *9 (E.D.N.Y. Feb. 1, 2011). Plaintiff has failed to explain how a six-year notice period would further judicial economy in this case. In light of the applicable law in this Circuit, the Court declines to stray from the parameters

set forth by other courts and thus denies Plaintiff's request to grant the six-year notice period.

Accordingly, the Court orders that the period set forth in the notice for employees who worked at Bongo Burrito and Charred Brick Oven from December 28, 2020 to the present, i.e. three years prior to the filing of the Complaint.

### D.    The Proposed Notice

Plaintiff has provided a proposed notice for the Court's review and endorsement.  Dkt. No. 40-1.  "Courts have broad discretion to craft appropriate notices that effectuate the overarching policies of the collective suit provisions and provide employees with accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate."  *Hunter*, 2024 WL 686929, at *3 (quoting *Hernandez v. Immortal Rise, Inc.*, No. 11-CV-4360, 2012 WL 4369746, at *6 (E.D.N.Y. Sept. 24, 2012)).  The Court hereby adopts Plaintiffs' proposed notice, subject to the modifications outlined below.

### i.    Covered Employees

As explained, Defendants Bongo Burrito and Charred Brick Oven constitute a single integrated enterprise subject to single employer status under the FLSA.  For the reasons set forth above, the prospective employees covered by the notice properly encompasses those who worked as a "host, waiter, server, bartender, barback, food runner, busser, delivery person, cook, dishwasher, food preparer, or porter" at Bongo Burrito or Charred Brick Oven.

### ii.    Notice Period

For the reasons set forth above, Plaintiff shall modify the proposed notice to covered employees who worked for Bongo Burrito and Charred Brick Oven from December 28, 2020 to the present.  This limit reflects the FLSA statute of limitations, as it is three years prior to the filing of the Complaint.

### iii.    Expedited Notice

The benefits accompanied by the efficient resolution of claims by members of a FLSA collective "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).    "Courts are encouraged to become involved in the notice process early, to insure 'timely, accurate, and informative' notice and to help maintain control over the litigation." *Lynch*, 491 F. Supp. 2d at 371 (quoting *Sperling*, 493 U.S. at 172).

Here, expedited notice is appropriate.    Prompt notice will further the interests of prospective plaintiffs as it will allow them to join the collective before their claims are barred by the statute of limitations.   Indeed, "every day that passes is a day of damages each potential opt-in plaintiff will be unable to recover."  *See Lynch*, 492 F. Supp. 2d at 371.  Accordingly, Plaintiff's request to send early notice is granted.

### iv.    Defendants' Counsel's Contact Information and Defendants' View of the Case

Plaintiff shall modify the proposed notice to include Defendants' counsel's contact information and Defendants' view of the case.  *See, e.g., Nyarko v. M&A Projects Restoration Inc.*, No. 18-CV-5194 (FB) (ST), 2021 WL 4755602, *17 (E.D.N.Y. Sept. 13, 2021) (ordering defense counsel's contact information to be included in the notice with language that putative collective action members should *not* contact the defense counsel if they wish to join the case). Therefore, the Court orders Defendants' counsel's contact information be added to the proposed notice, with the following, emphasized language: "If you decide to join this case, you should not contact defense counsel, but instead rely on Plaintiff's counsel or your own counsel to contact defense counsel."  *Hunter*, 2024 WL 686929, at *3.

### E.    Expedited Discovery Request

Plaintiff also requests that the Court require Defendants to produce, within ten (10) days, an excel-formatted list of all prospective opt-in plaintiffs with the following information: "names, titles, compensation rates, date of employment, last known mailing addresses, email addresses, and all known telephone numbers."  Dkt. No. 39 at 23-24.

"Courts in this District commonly grant requests for the production of names, mailing addresses, email addresses, telephone numbers, and dates of employment in connection with the conditional certification of a FLSA collective action."  *Lovelace v. Land Appliance Servs., Inc.*, 18-CV-6892 (DLI) (ST), 2020 WL 8921382, at *7 (E.D.N.Y. Jan. 3, 2020) (quoting *Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 488 (S.D.N.Y. 2016)), *report and recommendation adopted*, 2020 WL 8921381 (E.D.N.Y. Mar. 31, 2020); *see also Tate v. WJL Equities Corp.*, No. 13-CV-8616, 2014 WL 2504507, at *2 (S.D.N.Y. June 3, 2014) ("Courts in this Circuit have held that disclosure of employee contact information is relevant and appropriate in connection with conditional collective action certification.").  Moreover, courts have required that the contact information of potential FLSA collective members be produced in computer-readable formats whenever possible.  *See Mei Rong Du v. Dingxiang Inc.*, 19-CV-11924 (JPO)(BCM), 2020 WL 7404984, at *13 (S.D.N.Y. Dec. 17, 2020) (ordering defendants to produce contact information "in [E]xcel, if possible"); *Jacob v. Duane Reade., Inc.*, No. 11-cv-0160 (JPO), 2012 WL 260230, at *10 (S.D.N.Y. Jan. 27, 2012) (granting plaintiffs' request that defendants produce contact information in Microsoft Excel file).

Defendants shall also include job titles and compensation rates for the covered employees produced in the data file.  Defendants have not indicated that production of the requested information would be either "unduly burdensome [or] disruptive" and the Court sees no reason

why this would be the case. *Jacob v. Duane Reade, Inc.*, No. 11-CV-0160 (JPO), 2012 WL 260230, at *10 (S.D.N.Y. Jan. 27, 2012) (ordering defendants to provide contact information because such information "would be neither unduly burdensome nor disruptive"). Moreover, the Court notes that such production would aid in "facilitat[ing] the speedy collection of data . . . [and] the opt-in process." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 2010 WL 2362981, at *3 (S.D.N.Y.2010). Therefore, Defendants are directed to produce job titles and compensation rates for the covered employees produced in the computer-readable data file. *See also Benavides*, 166 F. Supp. 3d at 488 (requiring the Defendants produce, among other data points, "titles" and "compensation rates.").

Accordingly, by February 18, 2025,[9] Defendant shall produce to Plaintiff, in computer readable format, the full names, current home address or last known address, cell phone number, work and personal email addresses, and dates of employment with job titles of all former and current hourly workers of Defendant at any point in time between December 28, 2020 through the present.

## F.    Equitable Tolling

Plaintiff requests "that the applicable FLSA statute of limitations not be tolled until such time that Plaintiff is able to send notice to potential opt-in plaintiffs. Dkt. No. 39 at 24-25. The Court agrees, as Plaintiff has not claimed that some extraordinary circumstance stood in his way despite pursuing his rights diligently. *See Mottahedeh v. United States*, 794 F.3d 347, 352 (2d Cir. 2015); *see also Cooke*, 722 F. Supp. 3d at 146. Indeed, equitable tolling is applicable only in "rare

---

[9] The Court notes Plaintiff's request for expedited discovery within 10 days of order. Dkt. No. 39 at 23-24. Although the ten-day deadline proposed by Plaintiff is reasonable, (*see e.g.*, *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170 (S.D.N.Y. 2014) ("Bloomberg is ordered to provide such information in electronically readable format within 10 days of this Court's order.")), the Court grants Defendant additional time to complete the required productions.

and exceptional circumstances." *Phillips v. Generations Family Health Ctr.*, 723 F.3d 144, 150 (2d Cir. 2013) (quoting *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011)). Indeed, "while some courts have tolled the statute of limitations for the claims of potential opt-in plaintiffs for the period of time that a motion for conditional certification has been sub judice, several courts have held that delay by the court in deciding the motion does not justify equitable tolling." *Garcia v. Janus Homecare Agency, Inc.*, No. 1:23-CV-3321 (MKV), 2023 WL 7039543, at *6 (S.D.N.Y. Oct. 26, 2023).

Accordingly, there will be no equitable tolling of the relevant statute of limitations in the instant matter.

## III.    **Motion to Amend the Complaint**

### A.    **Legal Standard**

Pursuant to Federal Rule of Civil Procedure 15, "[t]he court should freely give leave [to amend] when justice so requires," making sure to interpret the rule liberally in favor of amendment so as to enable disputes to be resolved on the merits whenever possible.  *See* Fed. R. Civ. P. 15(a)(2); *Amaya v. Roadhouse Brick Oven Pizza, Inc.*, 285 F.R.D. 251, 253 (E.D.N.Y. 2012) (holding that leave to amend is entrusted to the court's discretion); *Assam v. Deer Park Spring Water, Inc.*, 163 F.R.D. 400, 404 (E.D.N.Y. 1995).  "Rule 15(a)(2) is a lenient standard, and the Court is to "freely give leave when justice so requires." *Borozny v. Raytheon Techs. Corp., Pratt & Whitney Div.*, No. 3:21-CV-1657 (SVN), 2023 WL 7037523, at *2 (D. Conn. Oct. 26, 2023) (citing *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 115 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 1112 (2022)).  "If the [movant] has at least colorable grounds for relief, justice . . . require[s]" that the Court grant leave to amend a Complaint.  *Golden Trade, S.r.L. v. Jordache*, 143 F.R.D. 504, 506 (S.D.N.Y.1992) (quoting *S.S. Silberblatt v. East Harlem Pilot Block–Building 1 Hous. Dev. Fund

*Co., Inc.*, 608 F.2d 28, 42 (2d Cir. 1979)).  "Although Fed. R. Civ. P. 15(a) generally governs the amendment of complaints, where the proposed amendment seeks to add new parties, Fed. R. Civ. P. 21 governs."  *Ramirez v. Cnty. of Nassau*, 345 F.R.D. 397, 403 (E.D.N.Y. 2024) (citations omitted).

Rule 21 states that "[p]arties may be . . . added by order of the court on motion of any party . . . at any stage of the action and on such terms as are just."  Fed. R. Civ. P. 21.  The Rule continues that a party may be added to an action "at any time, on just terms."  *Id.*  "In deciding whether to permit joinder, courts apply the same standard of liberality afforded to motions to amend pleadings under Rule 15."  *Brawer v. Egan-Jones Ratings Co.*, 347 F.R.D. 650, 653 (S.D.N.Y. 2024) (citation omitted); *see also Amaya v. Roadhouse Brick Oven Pizza, Inc.*, 285 F.R.D. 251, 253 (E.D.N.Y. 2012) ("There is . . . little practical difference between Rule 15 and Rule 21 since they both leave the decision whether to permit or deny an amendment to the district court's discretion." (citation omitted)).

"Under Rule 21, 'courts must consider judicial economy and their ability to manage each particular case, as well as how the amendment would affect the use of judicial resources, the impact the amendment would have on the judicial system, and the impact [it] would have on each of the parties already named in the action.'"  *Sly Mag., LLC v. Weider Publications L.L.C.*, 241 F.R.D. 527, 532 (S.D.N.Y. 2007) (quoting *Momentum Luggage & Leisure Bags v. Jansport, Inc.*, No. 00-CV-7909 (DLC), 2001 WL 58000, at *2 (S.D.N.Y. Jan. 23, 2001)).

Generally, leave to amend pleadings shall only be denied "if there is delay, bad faith, futility, or prejudice to the non-moving party."  *Hosking v. New World Mortg., Inc.*, 602 F. Supp. 2d 441, 445 (E.D.N.Y. 2009) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  In determining futility, the test is whether "the proposed claim could not withstand a Fed. R. Civ. P 12(b)(6)

motion to dismiss." *Salazar v. Browne Realty Assocs., L.L.C.*, 796 F. Supp. 2d 378, 383 (E.D.N.Y. 2011) (citing *Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).

Before applying this test, however, the Court notes that it is well-established in the Second Circuit that "[t]he burden of proving futility rests on the party opposing the amendment." *Eliya, Inc. v. Steven Madden, Ltd.*, No. 15-CV-01272 (DRH) (SIL), 2017 WL 8794774, at *5 (E.D.N.Y. Feb. 2, 2017), *report and recommendation adopted*, 2017 WL 1190943 (E.D.N.Y. Mar. 30, 2017); *Zuppardi's Appizza, Inc. v. Tony Zuppardi's Appiza, LLC*, No. 3:10-CV-1363, 2012 WL 1067652, at *1 (D. Conn. Mar. 30, 2012); *see Lumetrics, Inc. v. Bristol Instruments, Inc.*, 101 F. Supp. 3d 264, 270 (W.D.N.Y. 2015) ("In sum, [the opposing party] has failed to meet its burden to demonstrate that an amendment would be futile"); *Copantitla v. Fiskardo Estiatorio, Inc.*, No. 09-CV-1608, 2010 WL 1327921, at *3 (S.D.N.Y. Apr. 5, 2010) (internal quotation marks omitted) (holding that when a party objects to a motion to amend on futility grounds, "the moving party must merely show that it has at least colorable grounds for relief"); *Blaskiewicz v. Cty. of Suffolk*, 29 F. Supp. 2d 134, 137 (E.D.N.Y. 1998) ("The party opposing such amendment has the burden of establishing that leave to amend would be prejudicial or futile."); *Harrison v. NBD Inc.*, 990 F. Supp. 179, 185 (E.D.N.Y. 1998) ("The party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial or futile.").

**B.    Discussion**

Plaintiff requests leave to amend the Complaint to include (1) two claims for illegal rounding and time shaving under the FLSA and the NYLL, (2) claims for discrimination based on his disability under the ADA and the NYSHRL, and (3) to add Defendant Lobster Shack, a now-closed restaurant under which Defendant NDL Restaurant Corp. formerly conducted business.

Dkt. No. 52 at 1; *see also* Dkt. No. 52-2.  For the reasons set forth below, Plaintiff's motion is granted in part and denied in part.

### i.    Illegal Rounding and Time Shaving Claims

Plaintiff first seeks to amend the Complaint to include claims for time shaving and unlawful rounding in violation of the FLSA—extending to the FLSA Collective Plaintiffs—and the NYLL—extending to potential class action members.  Dkt. No. 52-1 at ¶¶ 73-74, 83-84.  Plaintiff points to the payroll records submitted by Defendants, which illustrate shortcomings in the time recorded by certain employees and what they were actually paid by Defendants.  *See* Dkt. No. 52 at 3; *see also* Dkt. No. 48-3.  Defendants oppose Plaintiff's request, contending that the discrepancies were "*de minimis*," unintentional, and due to human error.  Dkt. No. 55 at 2.

Here, the Court finds that the relevant factors for consideration favors providing Plaintiff with the ability to amend the FLSA and NYLL claims to include allegations of time shaving and rounding in contravention to both statutes.  The Court notes that Defendants do not allege bad faith or undue delay on behalf of Plaintiff in bringing his motion, nor do they allege that they would suffer prejudice.  Instead, Defendants contend that the proposed amendment (and all other proposals) would be futile.  *See* Dkt. No. 55; Dkt. No. 61.

Nevertheless, it appears that Plaintiff acted in good faith with due diligence in filing his motion.  Defendants attached the payroll records to their October 21, 2024 sur-reply to Plaintiff's motion to certify the FLSA collective.  *See* Dkt. No. 46-1.  Plaintiff filed the instant motion just over a month later, on December 5, 2024.  Dkt. No. 52.  Nothing before the Court suggests that Plaintiff's motion—filed a month after Defendants filed the records on the docket—was made in bad faith.  *See Morales v. Cnty. of Suffolk*, 952 F. Supp. 2d 433, 435 (E.D.N.Y. 2013) (finding good cause to amend the Complaint where the plaintiff filed the motion to amend a month after

discovery of new evidence); *Oneida Indian Nation of New York State v. Cnty. of Oneida,* 199 F.R.D. 61, 75-76 (N.D.N.Y. 2000) (finding no delay for motion to amend filed six months after intervenor joined the action); *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) ("Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend").

Furthermore, Defendants have not demonstrated that amendment to include the claims would be futile or impose prejudice. The allegations of time shaving and rounding stem from the same operative facts as the initial FLSA and NYLL claims: that Defendants failed to compensate Plaintiff and prospective opt-in plaintiffs for all hours worked. *Compare* Dkt. No. 1 at ¶¶ 57-74, *with* Dkt. No. 52-1 at ¶¶ 68-89. The allegations of Defendants' practices of time shaving and rounding is supported by payroll records that illustrate shortfalls in employee compensation spanning 1.52 hours to 6.38 hours on multiple occasions within the last two years. Dkt. No. 52 at 3; Dkt. No. 48-3. Courts regularly find amendments in similar FLSA actions do not prejudice a defendant in light of the notice provided for "additional claims aris[ing] from the same operative facts as the original claim, namely [an] alleged company-wide employment policy." *Searson v. Concord Mortg. Corp.*, No. 07-CV-3909 (DRH) (ARL), 2009 WL 3063316, at *3 (E.D.N.Y. Sept. 24, 2009); *Williams v. TSU Glob. Servs. Inc.*, No. 18-CV-72 (RRM) (ST), 2018 WL 6075668, at *3 (E.D.N.Y. Nov. 20, 2018) (permitting amendment to FLSA Complaint where additional claim revolved around the same nexus of fact as the plaintiff's other claims), *report and recommendation adopted*, 2019 WL 1056273 (E.D.N.Y. Mar. 1, 2019); *Boyd v. Pinnacle Athletic Campus, LLC*, No. 19-CV-6795 (MWP), 2022 WL 419348, at *6 (W.D.N.Y. Feb. 11, 2022) (permitting amendment to add time shaving claim under similar circumstances and noting standard), *report and recommendation adopted*, 2022 WL 669169 (W.D.N.Y. Mar. 7, 2022).

In sum, the Court is satisfied that Plaintiff has met the liberal pleading standards afforded to the instant motion. Therefore, Plaintiff is granted leave to amend the Complaint to include allegations of time shaving and rounding in violation of the FLSA and the NYLL.

### ii.    Disability Discrimination

Plaintiff next moves to include claims for disability discrimination under the ADA and the NYSHRL. Plaintiff's proposed claims are anchored in Defendants' alleged refusal to provide any accommodations for his condition and subsequent termination. Dkt. No. 52-1 at ¶¶ 61-62. Plaintiff asserts that his condition was an "aching back," which required him to request and take two days of sick leave from his position at Bongo Burrito. *Id.* at ¶¶ 57-58. Defendants oppose Plaintiff's proposed claim under the ADA but concede that there may be a viable claim under the NYSHRL.[10] Dkt. No. 55 at 2. Defendants thus request that the amendment for the NYSHRL claim "be conditioned on defendants being allowed its requested discovery as to plaintiff's medical records." *Id.*

To qualify as a disability under ADA protection, a plaintiff must show "'a physical or mental impairment that substantially limits one or more of the major activities' of an individual." *Bartlett v. New York State Bd. of L. Examiners*, 226 F.3d 69, 74 (2d Cir. 2000). It is well-settled, however, that a "'temporary impairment' lasting only a few months is, 'by itself, too short a duration . . . to be substantially limiting.'" *Francis v. Hartford Bd. of Educ.*, 760 F. App'x 34, 36 (2d Cir. 2019) (quoting *Adams v. Citizens Advice Bureau*, 187 F.3d 315, 316-17 (2d Cir. 1999)); *see also Levine v. Smithtown Cent. Sch. Dist.*, 565 F. Supp. 2d 407, 422 (E.D.N.Y. 2008)

---

[10] Defendants requested that the amendment for the NYSHRL claim "be conditioned on defendants being allowed its requested discovery as to plaintiff's medical records." Dkt. No. 55 at 2. On December 16, 2024, the Court found that Defendants were entitled to the discovery of such medical records and ordered that the parties confer to coordinate a time to exchange the documents. Text Order dated Dec. 16, 2024. The parties thereafter conveyed to the Court that they agreed to exchange the medical records spanning two years. Dkt. No. 63.

(explaining that the ADA requires a disability with some proof of permanency and collecting cases); *Hernandez v. Int'l Shoppes, LLC*, 100 F. Supp. 3d 232, 259-60 (E.D.N.Y. 2015) ("Non-severe impairments that last only for a short period of time are not necessarily covered under the ADA").

Here, Plaintiff alleges that he suffered from an "aching back" that prevented him from bending, stopping or squatting, performing impact exercise, or lifting more than ten pounds, which required "continuing epidural shots from his doctors" and to be absent from work for two days. Dkt. No. 52-1 at ¶ 61. But Plaintiff fails to allege any permanency to his condition or how it substantially limited his ability to perform his work. Indeed, that Plaintiff was ordered by his doctor to "take another day off to recover" suggests that his ailment was temporary, as nothing indicates any long-term leave of absence was required. Courts in this Circuit have found similar injuries insufficient to be protected under the ADA. *See Farina v. Branford Bd. of Educ.*, 458 F. App'x 13, 15 (2d Cir. 2011) (affirming finding that a back injury linked to thyroid cancer did not fall under the ADA); *Graaf v. N. Shore Univ. Hosp.*, 1 F. Supp. 2d 318, 321 (S.D.N.Y. 1998) (finding that a back injury forcing the plaintiff to temporarily leave work was insufficient for purposes of raising an ADA claim); *Stronkowski v. St. Vincent's Medical Center*, No. 94-CV-2175 (AHN) 1996 WL 684407, at *7 (D. Conn. Aug.1, 1996) (same). Thus, an amendment to the Complaint to include the proposed ADA claim would be futile as there are no colorable grounds for relief under the statute. Accordingly, Plaintiff's proposed amendment is denied with this respect.

Concerning the NYSHRL, however, the definition of disability is more expansive than the one under the ADA as it does not require that a disability be substantially limiting to a major life activity. *See Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 457 n.6

(S.D.N.Y. 2023).  To qualify as a disability under the NYSHRL, a plaintiff "need only prove that he has a 'medically diagnosable impairment.'"  *Ugactz v. United Parcel Serv., Inc.*, No. 10-CV-1247 (MKB), 2013 WL 1232355, at *14 (E.D.N.Y. Mar. 26, 2013) (quoting *Attis v. Solow Realty Dev. Co.*, 522 F.Supp.2d 623, 631-32 (S.D.N.Y.2007)); *Levine v. Smithtown Cent. Sch. Dist.*, 565 F. Supp. 2d 407, 428 (E.D.N.Y. 2008) ("Thus an individual can be disabled under the [Human Rights Law] if his or her impairment is demonstrable by medically accepted techniques; it is not required that the impairment substantially limit that individual's normal activities").

Plaintiff has met his burden of showing that he may have a colorable ground for relief as to his NYSHRL claim.  Plaintiff alleges that he sought medical attention from a doctor, and that doctor treated his ailment with continuing shots of a "Transforaminal Epidural Steroid Injection." Dkt. No.  1 at ¶ 52; Dkt. No. 52-1 at ¶ 61.  The NYSHRL was recently amended be liberally construed "for the remedial purposes thereof."  *See Nezaj v. PS450 Bar & Rest.*, 719 F. Supp. 3d 318, 335 n.3 (S.D.N.Y. 2024) (explaining implications of the 2019 amendment); *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020) (same).  And as explained above, the Court does not find that Plaintiff acted in bad faith or undue delay in seeking amendment to the Complaint, which does not pose a risk of prejudice given its nexus to the operative facts underpinning the initial claims.

Accordingly, Plaintiff is granted leave to amend the Complaint to include the proposed NYSHRL claim; Plaintiff request is denied with respect to the proposed ADA claim.

### iii.    Lobster Shack

Finally, Plaintiff seeks to add Lobster Shack—a now defunct restaurant owned by Mr. Garofalo—as a Defendant to the action.  *See* Dkt. No. 52 at 1; Dkt. No. 52-1 at ¶¶ 11, 14.  Lobster Shack was the predecessor to Charred Brick Oven and the entity under which Defendant NDL

41

Restaurant Corp. had formerly done business; Charred Brick Oven now operates at the location in which Lobster Shack was located. *See* Dkt. No. 52-1 at ¶ 11. Plaintiff's proposed amendment indicates that Lobster Shack "was closed in or around 2020." Dkt. No. 52-1 at 12.

Here, Plaintiff's proposed amendment to add FLSA collective claims against Lobster Shack would be futile. First, Plaintiff has not included any evidence that would suggest Lobster Shack would be part of the single integrated enterprise of Bongo Burrito and Charred Brick Oven. Similar to the deficiencies in the allegations against Puglia's, Plaintiff fails to allege the hallmarks that might suggest Lobster Shack shared a "common purpose" with Bongo Burrito and Charred Brick Oven, *see Apolinar*, 2016 WL 2903278, at *4, including any transfer of items between Lobster Shack and other restaurants, the presence of common storage space, or common marketing practices amongst the businesses. *See Flores*, 256 F. Supp. 3d at 442.

More importantly, the Court has limited the notice period for the FLSA collective to December 28, 2020 to the present. As Lobster Shack purportedly closed "in or around 2020," any employees that Plaintiff might seek to include in the action would almost assuredly fall outside of the notice period and the FLSA statute of limitations. Accordingly, Plaintiff's request to amend the Complaint to include Lobster Shack as a Defendant is denied with respect to any claims under the FLSA.

Plaintiff's amendment to include Lobster Shack as a Defendant, however, also affects those claims arising under the NYLL and thus those available to the putative class. Dkt. No. 52 at 1. A plaintiff alleging violations of the NYLL has a longer period to bring suit than those under the FLSA, as the NYLL has a six-year statute of limitations. *See Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 38 (E.D.N.Y. 2015) (citing N.Y. Lab. Law §§ 198(3), 663(3)). In light of the discrepancies in the hours worked and the wages actually paid to Defendants'

42

employees, *see* Dkt. No. 52 at 3, Plaintiff's addition of Lobster Shack to the putative class's NYLL claims would not be futile under the relevant statute of limitations.

Moreover, and as explained above, the Court finds no undue delay, bad faith, or prejudice on the part of Plaintiff. Plaintiff claims he discovered that Lobster Shack was a possible party to the action "through recent depositions." Dkt. No. 52 at 1. Further, addition of Lobster Shack will have minimal impact of on and not prejudice Defendants, as discovery is still ongoing and the restaurant is the predecessor of Charred Brick Oven, suggesting that Defendants were on notice that Lobster Shack could have been named in the initial Complaint. At bottom, the Court finds that granting leave to amend in the instant case promotes "'judicial economy by making it possible to dispose of all contentions between parties in one lawsuit.'" *See Shi Ming Chen v. Hunan Manor Enter., Inc.*, 437 F. Supp. 3d 361, 364 (S.D.N.Y. 2020) (quoting *Bilt-Rite Steel Buck Corp. v. Duncan's Welding & Corr. Equip., Inc.*, No. 90-CV-311 (TCP)1990 WL 129970, at *1 (E.D.N.Y. Aug. 24, 1990)).

Accordingly, the Court will permit Plaintiff leave to amend the Complaint to include Lobster Shack as a Defendant, but only with respect to his NYLL claims.

## IV. <u>Requests for Sanctions</u>

Finally, there are two outstanding requests for sanctions before the Court. First, Plaintiff "believes Defendants' opposition [to the motion to amend the complaint] is frivolous and will move for fees and costs should they choose to oppose." Dkt. No. 61. As discussed herein, Plaintiff's motion is not frivolous. The Court therefore denies Plaintiff's request for sanctions. *See Amimon, Inc. v. Shenzhen Hollyland Tech Co. LTD*, No. 20-CV-9170 (ER), 2024 WL 3534403, at *9 (S.D.N.Y. July 25, 2024) (denying similar request on the same grounds).

Next, Plaintiff contends that Defendants have "failed to satisfy their obligations" under the Court's January 7, 2025 Order, directing Defendants "to provide all requested outstanding records relating to Wicked Taco LLC to Plaintiff by January 17, 2025." Dkt. No. 72 at 1-2; Text Order Dated Jan. 7, 2025. Specifically, Plaintiff submits that "Defendants have failed to produce the outstanding records for front-of-house employees at Wicked Taco." Dkt. No. 72 at 2. Plaintiff requests that a negative inference be drawn against Defendants for failing to produce the information, and further that they "be sanctioned $500 per day for continued failure to produce" the materials. *Id.*

Defendants respond that they payroll records concerning Charred Brick Oven and Puglia's is stayed pending this Order. *Id.* at 2-3. Additionally, Defendants state they interpreted the January 7, 2025 Order to require production of only documents in Wicked Taco's physical possession, which they have satisfied. *Id.*

Here, the Court declines to impose sanctions on Defendants at this time. The factual and procedural history and context of the instant case is far from straightforward. The Court does not find that Defendants have exhibited behavior warranting sanctions or that Plaintiff has carried his burden of proving such repercussions are necessary. *See Fam. Dollar Stores, Inc. v. United Fabrics Int'l, Inc.*, No. 11-CV-2574 (CM) (JCF), 2012 WL 1123736, at *4 (S.D.N.Y. Apr. 4, 2012) (explaining that the requesting party has the burden of demonstrating a production is insufficient for the purposes of sanctions).

The Court, however, clarifies its previous decision in light of the discussion above: Defendants shall produce to Plaintiff all pay and time records pertaining to Wicked Taco LLC d/b/a Bongo Burrito and NDL Restaurant Corp. d/b/a Charred Brick Oven by February 18, 2025. This includes those records held by Paychex that are not within Defendants' physical possession.

As Defendants have indicated that they have the practical ability to obtain past payroll records from their vendor (Dkt. No. 49-2), they shall obtain all pay and time records for all employees who worked at Bongo Burrito and Charred Brick Oven from December 28, 2020 to the present, as consistent with this Order, and produce said records to Plaintiff. *See Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007) ("if a party has access and the practical ability to possess documents not available to the party seeking them, production may be required"); *Equal Emp. Opportunity Comission v. M & T Bank Corp.*, No. 17-CV-5077 (KMK) (LMS), 2018 WL 11631436, at *4 (S.D.N.Y. May 4, 2018) (ordering production of payroll records that the defendant had practical ability to obtain from third parties); *Ni v. Red Tiger Dumpling House Inc.*, No. 19-CV-3269 (GRB) (SIL), 2022 WL 19927558, at *5 (E.D.N.Y. Oct. 26, 2022) (same); *Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Iron Workers Union Loc. 361 v. McNulty*, No. 20-CV-4979 (LGS) (BCM), 2023 WL 5747345, at *8 (S.D.N.Y. Sept. 6, 2023) (same).

## V.    **Conclusion**

For the reasons set forth above, the Court grants in part and denies in part Plaintiff's motion for conditional certification as a collective action under the FLSA pursuant to 29 U.S.C. § 216(b). The Court also grants in part and denies in part Plaintiff's motion for leave to file an amended Complaint.  The Court further orders that:

(1) By **February 18, 2025**, Defendants shall produce to Plaintiff a spreadsheet including the names, dates of employment, positions held, last known addresses, and email addresses for all covered employees employed by the Defendants Bongo Burrito and Charred Brick Oven at any time from December 28, 2020 to the present;

(2) Defendants shall produce to Plaintiff all pay and time records for all employees who were employed by Wicked Taco LLC d/b/a Bongo Burrito and NDL Restaurant Corp. d/b/a

Charred Brick Oven from December 28, 2020 to the present by **February 18, 2025**.

(3) Plaintiff shall file the amended Complaint consistent with this Order by **February 18, 2025.**

(4) The parties shall meet and confer in good faith, and, by **March 3, 2025**, the parties shall file a revised proposed notice that complies with the directives set forth herein; and

(5) By **April 1, 2025**, Plaintiff or his designated representative shall cause a copy of the proposed notice to be disseminated to the covered employees by first class mail and email.


Dated:        Brooklyn, New York
              January 31, 2025                **SO ORDERED.**

                                        ___*/s/ Joseph A. Marutollo*___
                                        JOSEPH A. MARUTOLLO
                                        United States Magistrate Judge