**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs*
*and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

JOSE R GONZALEZ, *on behalf of himself,*
*FLSA Collective Plaintiffs*
*and the Class,*

              Plaintiff,

    v.

WICKED TACO LLC
      d/b/a BONGO BURRITO,
NDL RESTAURANT CORP.
      d/b/a CHARRED BRICK OVEN,
      f/d/b/a LOBSTER SHACK,
D & L RESTAURANT CORP.,
      d/b/a PUGLIAS
and GREGORY GAROFALO,

              Defendants.

---

Case No.: 23-cv-09555 (NCM)(JAM)

**FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT**

Jury Trial Demanded

      Plaintiff, JOSE R GONZALEZ ("Plaintiff"), on behalf of himself and others similarly situated, by and through their undersigned attorneys, hereby file this First Amended Class and Collective Action Complaint against Defendants, WICKED TACO LLC d/b/a BONGO BURRITO, NDL RESTAURANT CORP. d/b/a CHARRED BRICK OVEN, f/d/b/a LOBSTER SHACK, D & L RESTAURANT CORP. d/b/a PUGLIAS, (collectively, "Corporate Defendants"), and GREGORY GAROFALO ("Individual Defendant" and, together with Corporate Defendants,

"Defendants"), and states as follows:

<h2 style="text-align:center"><strong><u>INTRODUCTION</u></strong></h2>

1.     Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. Seq.* ("FLSA"), that he is entitled to recover from Defendants: (1) unpaid overtime compensation due to fixed salary, (2) unpaid overtime, due to illegal rounding, (3) unpaid overtime, due to time shaving, (4) liquidated damages, and (4) attorneys' fees and costs.

2.     Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), he is entitled to recover from Defendants: (1) unpaid overtime compensation due to fixed salary, (2) unpaid wages, including overtime, due to illegal rounding, (3) unpaid wages, including overtime, due to time shaving, (4) unpaid spread of hours premiums, (5) statutory penalties for failing to provide wage and hour notices upon hiring and as legally required thereafter, (6) statutory penalties for failing to provide proper wage statements for each payment period, (7) liquidated damages, and (8) attorneys' fees and costs.

3.     Plaintiff further individually alleges that, pursuant to the New York State Human Rights Law, New York Executive Law § 296 ("NYSHRL"), Plaintiff was deprived of his statutory rights due to the following: (i) Defendants' discrimination based on Plaintiff's disability; (ii) Defendants' failure to reasonably accommodate Plaintiff's disability; and (iii) Defendants' retaliation against Plaintiff. Due to the above violations, Plaintiff seeks to recover from Defendants:(1) economic damages, (2) compensatory damages, (3) punitive damages, (4) damages for egregious emotional distress, and (5) attorneys' fees and costs.

4.     Plaintiff further alleges, on an individual basis, that Defendants violated the New York State Earned Safe and Sick Time Act, ("ESSTA"), when Defendants retaliated against

Plaintiff when the latter asserted his rights under the ESSTA. Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, and attorneys' fees and costs.

5.     Plaintiff additionally alleges that Defendants unlawfully retaliated against him for raising complaints regarding Defendants' failure to properly compensate him in violation of the NYLL and seeks to recover from Defendants: (1) economic damages, (2) punitive damages, (3) compensatory damages, (4) damages for egregious emotional distress, and (5) attorneys' fees and costs.

<strong><u>JURISDICTION AND VENUE</u></strong>

6.     This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

7.     Venue is proper in the Eastern District pursuant to 28 U.S.C. §1391.

<strong><u>PARTIES</u></strong>

8.     Plaintiff JOSE R GONZALEZ is a resident of Queens County, New York.

9.     At all relevant times to this action, Defendants have owned and operated the following restaurants located in Nassau County:

a)  Bongo Burrito - 3925 Merrick Rd, Seaford, NY 11783

b)  Charred Brick Oven - 3915 Merrick Rd, Seaford, NY 11783

c)  Lobster Shack - 3915 Merrick Rd, Seaford, NY 11783 (now closed)

d)  Puglia's Italian Steakhouse – 3943 Merrick Rd, Seaford, NY 11783 (now closed) (collectively, the "Restaurants").

10.     The Restaurants are operated as a single integrated enterprise under the common control of Defendants. Specifically, the Restaurants are engaged in related activities, share common ownership, and have a common business purpose.

a)   The Restaurants are under the control of Corporate Defendants and Individual Defendant. Specifically, Individual Defendant GREGORY GAROFALO owns and operates all the Restaurants. *See* **Exhibit A.**

b)   The Restaurants are on the same block, just steps away from each other. Because of the proximity of the Restaurants, the Restaurants interchange employees and supplies, and are under common management. For instance, Plaintiff is frequently instructed by Defendants to transfer supplies between Bongo Burrito and Charred Brick Oven. Defendants also share basement space among the various Restaurants to house supplies and employment records.

c)   Employees and managers are transferred among the Restaurants on an as needed basis, including but not limited to one of Plaintiff's former managers, Joseph Bochichio, who picked up shifts across Defendants' various Restaurants before being promoted to manager, Melissa [LNU], who currently manages payroll for Defendants' Charred Brick Oven and Defendants' Charred Brick and Bongo Burrito.

d)   The Restaurants share centralized Human Resources that deals with hiring, firing, and administering all the Restaurants' work force. Defendants' shared Human Resources is implemented and overseen by Individual Defendant GREGORY GAROFALO.

e) The Restaurants implement a common payroll system that is shared by and administered across multiple restaurants at all relevant times.

f) The Restaurants share financial resources, as the Restaurants often do raffle giveaways that include coupons from both Restaurants. For instance, Bongo Burrito held a "Holiday Sip n' Shop" event on November 15, 2023. This event had a raffle giveaway that included a $50.00 Gift Card from Charred Brick Oven and a $50.00 Gift Card from Bongo Burrito. *See* **Exhibit B.**

g) Additionally, Charred Brick Oven advertised Bongo Burrito's opening on its Instagram account. *See* **Exhibit C.**

h) Lobster Shack is currently closed, but when in business was operated by Defendants as a single integrated enterprise with Defendants' other Restaurants, which are all located on the same block.

i) When Lobster Shack was closed in or around 2020, Defendants rebranded the restaurant as what is now Charred Brick Oven, located at the same location previously occupied by Lobster Shack.

j) When Defendants opened Charred Brick Oven, many putative class members who were previously employed by Lobster Shack were transferred or simply continued their employment at Charred Brick Oven.

All Corporate Defendants are appropriately named in this action because the Restaurants share identical illegal wage and hour policies and are under common ownership, management and control. The Restaurants and the relevant Corporate Defendants are properly named on the basis of their outstanding liability to the FLSA Collective Plaintiffs, and Class Members for whom Plaintiff seeks to represent.

11.     Corporate Defendant, WICKED TACO LLC d/b/a BONGO BURRITO, is a domestic business corporation organized under the laws of the State of New York with a principal place of business and an address for service of process located at 3925 MERRICK ROAD, SEAFORD, NY, UNITED STATES, 11783.

12.     Corporate Defendant, NDL RESTAURANT CORP. d/b/a CHARRED BRICK OVEN, f/d/b/a LOBSTER SHACK is a domestic business corporation organized under the laws of the State of New York with a principal place of business and an address for service of process located at 3915 MERRICK ROAD, SEAFORD, NY, UNITED STATES, 11783. LOBSTER SHACK is appropriately included as a Defendant as a predecessor to Defendants' CHARRED BRICK OVEN. Many putative Class Members were employed by LOBSTER SHACK before it was closed and rebranded as CHARRED BRICK OVEN. Once rebranded, many continued their employment with Defendants.

13.     Corporate Defendant, D & L RESTAURANT CORP. d/b/a PUGLIA'S ITALIAN STEAKHOUSE is a domestic business corporation organized under the laws of the State of New York with a principal place of business at 3943 MERRICK ROAD, SEAFORD, NY, UNITED STATES, 11783 and an address for service of process located at c/o Lisa Marie Boyd, 53 MAGNOLIA DRIVE, SELDEN, NY, UNITED STATES, 11784.

14.     Individual Defendant GREGORY GAROFALO  is the owner and executive officer of Corporate Defendant. GREGORY GAROFALO  exercised control over the employment terms and conditions of Plaintiff, FLSA Collective Plaintiffs and Class members. GREGORY GAROFALO had and exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) set employee work schedules, and (iv) otherwise affect the quality of employment of Plaintiff, FLSA Collective Plaintiffs and Class members. At all relevant times,

employees could complain to GREGORY GAROFALO regarding any of the terms of their employment, and GREGORY GAROFALO would have the authority to effect any changes to the quality and terms of their employment. GREGORY GAROFALO ensured that employees effectively served customers and exercised functional control over the business and financial operations of Corporate Defendant. GREGORY GAROFALO had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs and Class members and could reprimand employees.

15.     At all relevant times, Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL, and regulations thereunder.

16.     Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

17.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class members were directly essential to the businesses operated by Defendants.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

18.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section l6(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees, (including but not limited to hosts, waiters, servers, bartenders, barbacks, food runners, bussers, delivery persons, cooks, dishwashers, food preparers, porters, and employees misclassified as exempt employees) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

19.     At all relevant times, Plaintiff and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures,

protocols, routines, and rules, all culminating in a willful failure and refusal to pay them proper overtime premiums at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek, due to fixed salary, time shaving and improper rounding. The claims of Plaintiff stated herein are essentially the same as those of other FLSA Collective Plaintiffs.

20.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

21.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("FRCP") Rule 23, on behalf of all non-exempt employees, (including but not limited to hosts, waiters, servers, bartenders, barbacks, food runners, bussers, delivery persons, cooks, dishwashers, food preparers, porters, and employees misclassified as exempt employees) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

22.     All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the title of the position held, and rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under FRCP 23.

23.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of employees misclassified as exempt ("Misclassified Subclass"), who also number more than forty (40). Plaintiff is a member of both the Class and the Misclassified Subclass.

24.     Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to Defendants' corporate practices of: (i) failing to pay overtime premiums at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek due to fixed salary, (ii) failing to pay all wages owed, including overtime wages due to time shaving, (iii) failing to pay all wages owed, including overtime wages, due to improper rounding, (iv) failing to pay spread of hours premium, (v) failing to provide Class members with proper wage statements with every payment of wages; and (vi) failing to properly provide proper wage notices to Class members, at date of hiring and dates of all wage changes, pursuant to NYLL.

25.     Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

26.     Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and

competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

27.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

28.     Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former

employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

29.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a)  Whether Defendants employed Plaintiff and the Class members within the meaning of NYLL;

b)  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiff and the Class members;

c)  At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and the Class members for their work;

d)  Whether Defendant properly notified Plaintiff and the Class members of their hourly rates and overtime rates;

e)  Whether Defendants properly compensated Plaintiff and Class members for all hours worked;

f)  Whether Defendants paid the Plaintiff and Class members the overtime premium for all hours worked in excess of forty (40) each workweek;

g)  Whether Defendants failed to compensate Plaintiff and Class members for all hours worked due to time shaving;

h)  Whether Defendants failed to compensate Plaintiff and Class members for all hours worked due to improper rounding;

i) Whether Defendants paid the Plaintiff and Class members spread of hours premium for shifts worked in excess of ten (10) hours;

j) Whether Defendants provided proper wage notice, at date of hiring and dates of all wage changes thereafter, to all non-exempt employees per requirements of the NYLL; and

k) Whether Defendants provided proper wage statements for each pay period to Plaintiff and Class members, and whether those wage statements properly stated Plaintiff's and Class members' overtime compensation and spread of hours in accordance with NYLL.

## STATEMENT OF FACTS

*Wage and Hour Claims*

30. On or around October 16, 2023, Plaintiff was hired by Defendants to work as a cook for Defendants' Bongo Burrito restaurant located at 3925 Merrick Road, Seaford, NY 11783. Plaintiff was employed by Defendants until on or about November 14, 2023, when he was terminated by Defendants for using his sick leave as explained in detail below.

31. Throughout his employment, Plaintiff was regularly scheduled to work from 11:00 a.m. to 10:00 p.m. Monday through Friday, for a total of fifty-five hours (55) hours per week.

32. Throughout his employment, Plaintiff was paid a fixed salary of $ 1,500 weekly regardless of how many hours he worked each workweek. Plaintiff was not compensated overtime premium for the hours he worked in excess of forty (40) hours in each workweek. Similarly, FLSA Collective Plaintiffs and Misclassified Subclass members were similarly paid on a fixed salary basis without any overtime premium for all hours worked over forty (40) each week.

33. Throughout his employment, there was never any agreement that Plaintiff's fixed salary was intended to cover the overtime hours worked in excess of forty (40) each week. Similarly, FLSA Collective Plaintiffs and Misclassified Subclass members never had any agreement with Defendants that their fixed salaries would cover their overtime hours.

34. During his employment, Defendants compensated Plaintiff in whole hour increments paid on an hourly basis for a fixed number of units or hours worked. Class Members and Misclassified Subclass members were similarly paid in increments to the whole or half hour, even though Defendants required employees across the Restaurants to punch in and punch out using an electronic time clock system that captured employee time to the precise minute. Through this system of compensating Plaintiff, Class Members and Misclassified Subclass members in whole or half hour increments, Defendants unlawfully rounded down the hours worked by employees.

35. At all relevant times, Defendants failed to compensate Plaintiff, Misclassified Subclass members and Class Members for all hours worked through time shaving. Defendants' electronic punch records and corresponding wage records show that employees were not paid for all time worked due to time shaving. For Plaintiff, Defendants accomplished this by not paying him for any overtime hours, despite his regularly working in excess of forty hours each week. For others, Defendants would simply not pay employees for several hours, including overtime hours, even though this time was clearly recorded on their time sheets.

36. Throughout his employment, as mentioned above, Plaintiff regularly worked from 11:00 a.m. to 10:00 p.m. for a total of eleven (11) hours per shift. However, despite working shifts that exceed ten (10) hours, Plaintiff was not paid any spread of hours premiums. Similarly, Class

members who were required to work hours in excess of ten (10) were not paid any spread of hours premiums.

37.     Plaintiff and Class members did not receive wage statements that were in compliance with NYLL. Being paid a fixed salary, Plaintiff and Class members' wage statements failed to include their regular hourly rate of pay, the overtime rate of pay, the number of regular hours worked, and the number of overtime hours worked in violation of the NYLL.

38.     Defendants failed to provide Plaintiff and the Class members with wage notices at hiring and at dates of all wage changes thereafter. Plaintiff did not receive wage notices either upon being hired or upon wage changes since the date of hiring, in violation of the NYLL.

39.     In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

40.     Here, Defendants' failure goes beyond generating a risk of harm to Plaintiffs and Class members. Defendants' conduct actually harmed Plaintiffs and Class members.

Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiffs' and Class members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

41. Had the wage statements Defendants provided to Plaintiff and Class members listed the total number of hours Plaintiff and Class members worked and their corresponding pay rates, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours worked overtime or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee worked overtime. Either possibility would have allowed Plaintiff and Class members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

42. The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiffs and Class members. This delayed payment caused Plaintiffs and Class members to struggle to pay bills and other debts.

43. Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL.

44. The direct effect of failing to state the number of hours an employee worked and the corresponding pay rate is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the

employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. See *Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); T.F. v. N.F., 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

45.     The effect of reporting reduced wages on an employee's W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co*., 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

46.     "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paysubs. The paystub processing service *realcheckstubs* explains: "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, No, 2023 U.S. Dist. LEXIS 38163, at 18, 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022)).

47.     Here, it is clear that Defendants' failure to provide Plaintiff and Class members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours and pay rates been reported for a given pay period, Defendant's automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff and Class members. That, in turn, would have increased Plaintiff's and Class members' entitlement to social security benefits. Because the omission prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

48.     Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs'

entitlement to benefits. *Id.* "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id.*

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

49.     The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id.* Plaintiff and Class members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

50.     Whether or not any Class members are presently eligible for social security benefits is legally immaterial. *See id.* ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

51.     The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or

disability benefits.

All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income.

*Id.*

52. Here, the problem is not merely challenging but insurmountable. Plaintiff and Class members cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiff and Class members. The problem, rather, is that Plaintiff and Class members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as soon as Defendants sent his W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

53. Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs, and Class members the proper overtime rate for hours worked in excess of forty (40) in each workweek due to being paid a fixed salary.

54. Due to these unlawful acts of Defendants, Plaintiff suffered liquidated damages in an amount not presently ascertainable. In addition, Plaintiff is entitled to reasonable attorney's fees, statutory penalties and costs and disbursements of the action, pursuant to NYLL.

<u>ESSTA Claims</u>

55. On or around November 13, 2023, Plaintiff took sick leave for one day to seek medical attention for his aching back. Plaintiff was injected with a "Transforaminal Epidural Steroid Injection." Due to this procedure, Plaintiff suffered pain and other symptoms, and was ordered by the doctor to take another day off to recover.

56.    Accordingly, Plaintiff requested Defendants another sick leave for November 14, 2023.

57.    However, instead of granting the sick leave, Defendants retaliated against Plaintiff by illegally firing him for taking an additional sick leave.

58.    Defendants violated the ESSTA and the New York Labor Law when they terminated Plaintiff for asserting his right for leave to attend to his serious health condition. Plaintiff formally attempted to assert his rights under the ESSTA but was denied by Defendants.

*Disability Discrimination, Failure to accommodate, and unlawful retaliation under the NYSHRL*

59.    As a result of Plaintiff's physical condition, Plaintiff could not bend, stoop or squat, perform impact exercise, or lift more than ten (10) pounds. Plaintiff had to receive continuing epidural shots from his doctors.

60.    Upon becoming aware of Plaintiff's condition and request for accommodations, Defendants discriminated against Plaintiff on the basis of Plaintiff's disability by refusing to provide any accommodations and instead retaliated against Plaintiff by callously terminating him, ostensibly claiming that business was slow. Defendants' actions violated the NYSHRL.

61.    Defendants were aware of Plaintiff's physical condition. Plaintiff made Defendants aware that he would take a sick leave and provided Defendants a doctor's note on or around November 13, 2023. However, the day after Plaintiff took his first day of sick leave and asked Defendants to take another day of sick leave and for reasonable accommodations due to his medical condition, Defendants retaliated against Plaintiff by terminating him on the same day.

62.    At all relevant times, Defendants knowingly and willfully operated their business with a policy of subjecting Plaintiff to discrimination, retaliation, and failure to provide reasonably accommodations.

63.     During the relevant time, Defendants employed at least 15 employees in the aggregate across their Restaurants.

64.     As a result of Defendants' discriminatory and retaliatory conduct, Plaintiff suffered from emotional distress under the NYSHRL.

65.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

### STATEMENT OF CLAIM
### COUNT I
### VIOLATION OF THE FAIR LABOR STANDARDS ACT[2]

66.     Plaintiff realleges and reavers all the foregoing allegations as if fully set forth herein.

67.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

68.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

69.     At all relevant times, Corporate Defendant had gross annual revenues in excess of $500,000.

---

[2] Pursuant to the Court's Opinion and Order, dated January 31, 2024 (ECF No. 73), Plaintiff does not bring FLSA allegations against Lobster Shack, as that entity closed around 2020, and the Court limited the collective notice period from December 28, 2020, to the present. *See* Opinion and Order at 42 (ECF No. 73).

70. At all relevant times, Defendants willfully violated Plaintiff's and FLSA Collective Plaintiffs' rights by failing to pay overtime compensation for hours worked in excess of forty (40) each week, due to fixed salary.

71. At all relevant times, Defendants willfully violated Plaintiff's and FLSA Collective Plaintiffs' rights by failing to pay overtime compensation for hours worked in excess of forty (40) each week, due to time shaving.

72. At all relevant times, Defendants willfully violated Plaintiff's and FLSA Collective Plaintiffs' rights by failing to pay overtime compensation for hours worked in excess of forty (40) each week, due to unlawful rounding.

73. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

74. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

75. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (*i.e.*, double) damages pursuant to the FLSA.

76. Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime compensation, due to fixed salary, plus an equal amount as liquidated damages.

77.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II
## VIOLATION OF THE NEW YORK LABOR LAW

78.     Plaintiff realleges and reavers all the foregoing allegations as if fully set forth herein.

79.     At all relevant times, Plaintiff and Class members were employed by Defendants within the meaning of the NYLL §§ 2 and 651.

80.     At all relevant times, Defendants willfully violated Plaintiff and Misclassified Subclass members' rights by failing to pay overtime compensation for hours worked in excess of forty (40) each week, due to fixed salary.

81.     At all relevant times, Defendants willfully violated Plaintiff and Class members' rights by failing to compensate for all hours worked, including those in excess of forty (40) each week, due to time shaving.

82.     At all relevant times, Defendants willfully violated Plaintiff and Class members' rights by failing to compensate for all hours worked, including those in excess of forty (40) each week, due to unlawful rounding.

83.     At all relevant times, Defendants willfully violated Plaintiff and Class members' rights by failing to pay spread of hours premiums for shift exceeding ten (10) hours.

84.     Defendants failed to properly notify employees of their overtime pay rate, in direct violation of NYLL.

85.     At all relevant times, Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required by NYLL. Defendants are required to provide accurate and proper information on wage statements issued to employees in

accordance with the NYLL. Defendants failed to satisfy the requirements under the NYLL because they did not state the correct hourly rate, correct overtime rate, and all hours worked.

86.     Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class members with proper wage notices, at date of hiring and at dates of all wage changes thereafter, as required under NYLL.

87.     Due to Defendants' NYLL violations, Plaintiff and Class members are entitled to recover from Defendants their unpaid overtime compensation, due to fixed salary; reasonable attorneys' fees; liquidated damages; statutory penalties; and costs and disbursements of the action, pursuant to NYLL.

**COUNT III**
**VIOLATIONS UNDER THE**
**NEW YORK STATE HUMAN RIGHTS LAW**
**(N.Y. Exec. Law § 292, et seq.)**
**(brought on Plaintiff's behalf only)**

88.     Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

89.     The New York State Executive Law § 296(1)(a) provides that:

"1. It shall be an unlawful discriminatory practice:

(a) For an employer or licensing agency, because of an individual's [...] sex, disability, predisposing genetic characteristics, familial status, [...] to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

90.     The New York State Executive Law § 296(3)(a) provides that:

"It shall be an unlawful discriminatory practice for an employer, licensing agency, employment agency or labor organization to refuse to provide reasonable accommodations to the known disabilities, or pregnancy-related conditions, of an employee, prospective employee or member in connection with a job or occupation sought or held or participation in a training program."

91. Defendants violated the New York State Human Rights Law when they (i) discriminated against Plaintiff on the basis of Plaintiff's disability, (ii) failed to reasonably accommodate Plaintiff's disability, and (iii) retaliated against Plaintiff. Defendants subjected Plaintiff to this discriminatory and retaliatory conduct.

92. This discriminatory conduct was in willful disregard of the provisions of the NYSHRL.

93. As a direct and proximate result of Defendants' willful disregard of the NYSHRL, Plaintiff suffered damages in the form of lost future earnings and emotional distress. Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, damages for egregious emotional distress, and attorneys' fees and costs.

**COUNT IV**
**INTERFERENCE AND RETALIATION UNDER THE**
**EARNED SICK AND SAFE TIME ACT**

94. Plaintiff realleges and incorporates all the foregoing paragraphs of this Complaint as if fully set forth herein.

95. Defendants knowingly and willfully failed to provide Plaintiff with proper sick leave as required under the ESSTA.

96. Defendants are employers covered by ESSTA's sick leave provision as an "employers with between five and ninety-nine employees in any calendar year, each employee shall be provided with up to forty hours of paid sick leave in each calendar year." NY Lab. Law § 196-B(1)(b).

97. Defendants are required to give employees sick leave upon oral or written request for "a mental or physical illness, injury, health condition of such employee. . .regardless of whether

such illness, injury, or health condition has been diagnosed or requires medical care at the time that such employee requests such leave." NY. Lab. Law § 196-B(4)(a).

98.     NYLL makes it unlawful for an "employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner, discriminate, or retaliate against any employee because such employee has exercised his or her rights afforded under this section, including, but not limited to, requesting sick leave and using sick leave, consistent with the provisions of section two hundred fifteen of this chapter." New York Lab. Law § 196-B(7).

99.     Due to Defendant's ESSTA violations, Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, and attorneys' fees and costs.

**COUNT V**
**RETALIATION UNDER THE**
**NEW YORK LABOR LAW**

100.    Plaintiff realleges and incorporates all the foregoing paragraphs of this class and collective action Complaint as if fully set forth herein.

101.    At all relevant times, Plaintiff was an employee of Defendants within the meaning of the NYLL, and was a person covered by and intended to benefit from the provisions of the NYLL.

102.    Defendants willfully violated Plaintiff's rights under the NYLL by retaliating against Plaintiff by terminating his employment after asserting his rights under the ESSTA.

103.    Defendants' actions constitute a violation of Section 215 of the NYLL. In relevant part, NYLL § 215(1)(a) states:

> No employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer,

or to the commissioner or his or her authorized representative, or to the attorney general or any other person, that the employer has engaged in conduct that the employee, <u>reasonably and in good faith, believes violates any provision of this chapter,</u> or any order issued by the commissioner. . . . (emphasis added).

104. As alleged herein, Plaintiff was terminated by Defendants for asking an additional sick leave which Plaintiff was entitled to under the ESSTA, in violation of Section 215(a).

105. This retaliatory conduct by Defendants was in willful disregard of the provisions of the NYLL.

106. As a direct and proximate result of Defendants' willful disregard of the NYLL, Plaintiff suffered damages in the form of lost earnings and egregious emotional distress. Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, damages for egregious emotional distress, back pay, front pay, and attorneys' fees and costs.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs and Class members, respectfully request that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA, the NYLL, the NYSHRL, and ESSTA;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid overtime compensation due to fixed salary;

d. An award of unpaid overtime compensation due to time shaving;

e. An award of unpaid overtime compensation due to unlawful rounding;

f. An award of unpaid spread of hours premiums for shifts worked in excess of ten (10) hours;

g. An award of statutory penalties as a result of Defendants' failure to comply with NYLL wage notice and wage statement requirements;

h. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages and compensation for all hours worked, pursuant to 29 U.S.C. § 216;

i. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages and compensation for all hours of work, pursuant to NYLL;

j. An award of back pay, front pay, compensatory damages, punitive damages, damages for egregious emotional distress, and all other penalties the Court deems appropriate as a result of Defendants' willful retaliatory conduct against Plaintiff, pursuant to the NYLL;

k. An award of compensatory damages, punitive damages, and damages for egregious emotional distress, due under the NYSHRL;

a. All applicable compensatory and punitive damages under the ESSTA;

b. An award of pre-judgment and post-judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

c. Designation of Plaintiff as a Representative of the FLSA Collective Plaintiffs;

d. Designation of this action as a Class Action pursuant to FRCP 23;

e. Designation of Plaintiff as a Representative of the Class; and

f. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: February 7, 2024

Respectfully submitted,

By: _/s/ C.K. Lee_____
     C.K. Lee, Esq.
     LEE LITIGATION GROUP, PLLC
     C.K. Lee (CL 4086)
     Anne Seelig (AS 3976)
     148 West 24th Street, 8th Floor
     New York, NY 10011
     Tel.: 212-465-1188
     Fax: 212-465-1181
     *Attorneys for Plaintiff,*
     *FLSA Collective Plaintiff and the Class*