UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
JOSE R GONZALEZ, on behalf of himself, FLSA
Collective Plaintiffs and the Class,

                                            Plaintiff,

      v.

WICKED TACO LLC, d/b/a BONGO
BURRITO, *et al.*,

                                            Defendants.
-----------------------------------------------------------------------x

**OPINION AND ORDER**

23-CV-9555
(Merle, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

Defendants move for reconsideration of the Court's January 31, 2025 Opinion and Order granting in part and denying in part Plaintiff's motion for conditional certification as a collective action under the Fair Labor Standards Act (FLSA). *See* Dkt. No. 73, *Gonzalez v. Wicked Taco LLC*, No. 23-CV-9555 (NCM) (JAM), 2025 WL 353972, at *1-*5 (E.D.N.Y. Jan. 31, 2025); Dkt. No. 79. Defendants also move for a preliminary injunction based on improper communication with potential opt-in class members and corresponding sanctions based on improper communication with potential opt-in class members. *See generally* Dkt. No. 85.

Plaintiff cross-moves for sanctions against Defendants, arguing that their request for injunctive relief is frivolous. *See generally* Dkt. No. 87.

For the reasons set forth below, the Court denies each of the aforementioned motions.

**I.    <u>The Motion for Reconsideration</u>**

    **A.    Relevant Procedural Background**

The Court presumes familiarity with the factual and procedural background of this action and addresses only those relevant to Defendants' motions. *See Gonzalez v. Wicked Taco LLC*, No. 23-CV-9555 (NCM) (JAM), 2025 WL 353972, at *1-*5 (E.D.N.Y. Jan. 31, 2025).

On January 31, 2025, the Court granted in part and denied in part Plaintiff's motion to conditionally certify the FLSA collective. *See generally* Dkt. No. 73; *Wicked Taco*, 2025 WL 353972, at *1-*17. The Court granted Plaintiff's request for certification of a collective class of all current and former employees employed by Wicked Taco d/b/a Bongo Burrito and NDL Restaurant Corp. d/b/a Charred Brick Oven "including hosts, waiters, servers, bartenders, barbacks, food runners, bussers, delivery persons, cooks, dishwashers, food preparers, and porters employed by Defendants[.]" *Wicked Taco*, 2025 WL 353972, at *11. The Court denied Plaintiff's request to conditionally certify current and former employees who worked at D & L Restaurant Corp., d/b/a Puglia's, as part of the FLSA collective and denied the request for a six-year notice period. *See id.* at *10, *15.[1]

On February 13, 2025, Defendants filed the instant motion to reconsider "the scope of the class of covered employees" as conditionally certified by the January 31, 2025 Opinion and Order. Dkt. No. 79-1 at 2.[2] Defendants also filed an objection and motion to vacate the January 31, 2025 Opinion and Order to the District Court Judge assigned to this action, the Honorable Natasha C. Merle, on the same grounds as the motion for reconsideration that same date. *See* Dkt. No. 78. On February 14, 2025, Judge Merle denied the objection and motion to vacate because it was "virtually identical in substance to Defendants' motion for reconsideration of that same order[.]" Text Order dated Feb. 14, 2025. The Court denied the motion "with leave to renew within 14 days

---

[1] In addition to the granting in part and denying in part Plaintiff's motion for conditional certification, the Court granted and part and denied in part Plaintiff's motion to amend the Complaint. *Wicked Taco*, 2025 WL 353972, at *17-*22. Specifically, the Court permitted Plaintiff to amend the Complaint to include claims for illegal rounding and time shaving under the FLSA and New York Labor Laws and disability discrimination under the New York State Human Rights Law. *Id.* at *19-*21. Lastly, the Court denied Plaintiff's two requests for sanctions. *Id.* at *22-*23. Defendants do not challenge those determinations in their instant motion.

[2] Page citations are to the ECF-stamped page numbers.

2

of any order on Defendants' motion for reconsideration" currently pending before the undersigned. *Id.*

In Defendants' current motion to reconsider the Court's January 31, 2025 Opinion and Order, Defendants argue that the covered class for the FLSA collective should include only individuals employed by Defendants who had a "fixed salary" without overtime pay, as Plaintiff was such an employee. Dkt. No. 79 at 2-3. According to Defendants, the certified class is overbroad because Plaintiff only had "first-hand knowledge of 'fixed salary' violations," and thus his pleadings cannot meet the "similarly situated" test. *Id.* at 4. Defendants argue that the Court "should narrow the employee class to 'fixed salary' employees" because Plaintiff's affidavit in support of his motion for conditional certification is "replete with references to 'fixed salary' violations." *Id.* at 2-4. Defendants thus argue that the "class of covered employees must stick to those who are similarly situated," i.e., "those employees who were paid fixed salaries, as [P]laintiff was paid." *Id.*

Plaintiff opposes Defendants' motion, contending that the Court correctly certified the FLSA collective and defined the scope of the covered employees. Dkt. No. 81 at 5. Plaintiff argues that the Court "correctly determined that Defendants' contentions that Plaintiff is exempt from the FLSA are inappropriate at this stage of the litigation for purposes of collective certification" (*id.*), and that the parties' filings support the scope of the certified collective. *Id.* at 6-7. Plaintiff argues that there was "ample documentary evidence showing that similar to Plaintiff, Defendants failed to pay Covered Employees for all hours worked, including overtime hours." *Id.* at 7. Plaintiff adds that a litigant seeking conditional FLSA collective certification "does not require that Plaintiff and the opt-in plaintiffs be identical in all respects, but Plaintiff must at least provide some evidence that the proposed class members are similarly situated." *Id.*

3

**B.    Legal Standard**

The Second Circuit has described the standard for granting a motion for reconsideration as "strict." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "'[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" *Person v. Mulligan Security Corp.*, No. 22-CV-2980 (AMD) (LB), 2024 WL 2111522, at *2 (E.D.N.Y. May 10, 2024) (quoting *Van Buskirk v. United Grp. of Cos.*, 935 F.3d 49, 54 (2d Cir. 2019)); *see also* Loc. Civ. R. 6.3 (providing that the moving party must "set[] forth concisely the matters or controlling decisions which counsel believes the [c]ourt has overlooked").

Stated differently, to succeed on a motion for reconsideration, the movant must show "'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478 at 790)).

Significantly, "[a] motion for reconsideration is 'not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a "second bite at the apple[.]"'" *Weir v. Montefiore Medical Center*, No. 23-CV-4468 (KPF), 2024 WL 2049411, at *2 (S.D.N.Y. May 6, 2024) (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)); *see also Shearard v. Geithner*, No. 09–CV–0963 (JS) (ETB), 2010 WL 2243414, at *1 (E.D.N.Y. May 30, 2010) ("Reconsideration is not a proper tool to repackage and relitigate arguments and issues already considered by the Court in deciding the original motion."). The decision of whether to grant or deny a motion for reconsideration is

4

"within 'the sound discretion of the district court.'" *Premium Sports Inc. v. Connell*, No. 10-CV-3753 (KBF), 2012 WL 2878085, at *1 (S.D.N.Y. July 11, 2012) (quoting *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009)); *see also Zambito v. United States*, No. 18-CV-3612 (SIL), 2025 WL 788930, at *2 (E.D.N.Y. Mar. 11, 2025) ("The decision to grant or deny a motion for reconsideration lies squarely within the discretion of the district court.") (citation omitted).

### C. Discussion

Defendants request reconsideration of the January 31, 2025 Opinion and Order is denied. Defendants fail to demonstrate that there are any matters or controlling decisions that the Court has overlooked.

As explained in the January 31, 2025 Opinion and Order, *see Wicked Taco*, 2025 WL 353972, at *6, the first step in approval of an FLSA collective action involves "an initial determination to send notice to potential opt-in plaintiffs who may be similarly situated to the named plaintiffs with respect to whether a FLSA violation has occurred." *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010). Plaintiff's burden at this initial step is "minimal," *see Puglisi v. TD Bank, N.A.*, 998 F. Supp. 2d 95, 99 (E.D.N.Y. 2014), requiring a "modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." *Myers*, 624 F.3d at 555. "When applying this lenient evidentiary standard, a court evaluates pleadings and affidavits, but does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Singh v. Anmol Food Mart, Inc.*, No. 22-CV-5475 (RER) (JAM), 2024 WL 308241, at *2 (E.D.N.Y. Jan. 26, 2024).

As the Court explained, whether Plaintiff was "similarly situated" to other individuals employed by Defendants centered not upon any status of a fixed salary, but rather on whether he and others were subject to policies in violation of the FLSA. *Wicked Taco*, 2025 WL 353972, at

5

*12. The Court found that Plaintiff satisfied his burden at the conditional certification stage in showing that those polices, consisting of "the failure to receive overtime premiums for hours worked in excess of forty hours per week at a rate of at least one and one-half times the regular rate," *id.* at *12, were implemented by Defendants based upon Plaintiff's affirmation and the employee payroll records submitted in support of his motion for collective certification. *Id.* at *13; *see also* Dkt. No. 48 (containing payroll records).

Plaintiff's status as a "fixed salary" employee was therefore not determinative of the scope of employees covered by the conditionally certified collective as delineated by the Court, nor was it pertinent to the Court's finding that he and others were similarly situated under the FLSA and the "lenient certification standard" afforded to the procedural posture of this case. *See Wicked Taco*, 2025 WL 353972, at *13 (quoting *Cooke v. Frank Brunckhorst Co., LLC*, 722 F. Supp. 3d 127, 138 (E.D.N.Y. 2024)); *see also Myers*, 624 F.3d at 555 ("[Whether class members are similarly situated requires a] modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law"); *Romero v. La Revise Assocs., LLC*, 968 F. Supp. 2d 639, 645 (S.D.N.Y. 2013) ("[T]he focus of the inquiry is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated . . . with respect to their allegations that the law has been violated").

Defendants contend that the January 31, 2025 Order has "expanded the employee class to all employees, both fixed salary and hourly workers" which has "now opened the door to a fishing expedition of all employees' pay conditions, fixed salary and hourly, with no qualifications as to the type of violation." Dkt. No. 79-1 at 3. Defendants' argument, however, is centered upon an impermissible interpretation of the "similarly situated test."

6

The Second Circuit has explained that "to be 'similarly situated' means that named plaintiffs and opt-in plaintiffs are alike with regard to some material aspect of their litigation." *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 516 (2d Cir. 2020). In other words, "party plaintiffs are similarly situated, and may proceed in a collective, to the extent that they share a similar issue of law or fact material to the disposition of their FLSA claims" and "dissimilarities in other respects should not defeat collective treatment." *Id.* (quotations and citations omitted). The Supreme Court has further recognized that "Congress's goal in granting employees the right to proceed as a collective was to provide them 'the advantage of lower individual costs to vindicate rights by the pooling of resources.'" *Id.* (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)).

Here, regardless of whether an employee was paid hourly or by fixed salary, the alleged FLSA violation remains consistent: that Defendants failed to pay overtime compensation in excess of forty hours each week. *See* Dkt. No. 74 at ¶¶ 70-72. Whether Defendants' failure was due to fixed salaries, time shaving, or unlawful rounding does not shift focus from the similar issues of law and fact giving rise to Plaintiff's and putative collective members' claims. Thus, and contrary to Defendants' contention, the Court's determination does not broaden the scope of eligible employees "with no qualification as to the type of violation" (Dkt. No. 79 at 3), as the collective FLSA claims are anchored upon Defendants' alleged failure to properly compensate their employees for overtime hours in excess of forty hours. *See, e.g.*, *Garcia Ramos v. DNC Food Serv. Corp.*, No. 19-CV-2967 (VSB), 2020 WL 2832776, at \*6 (S.D.N.Y. June 1, 2020) (noting that wage and salary information was irrelevant to whether employees were subject to a common unlawful policy in finding the plaintiffs and opt-in plaintiffs similarly situated at the conditional certification stage); *Son v. Hand Hosp.*, No. 22-CV-4639 (RWL), 2025 WL 524026, at \*9

7

(S.D.N.Y. Feb. 18, 2025) ("the fact that there are pay practices unique to one group of similarly situated employees does not take away from the fact of there being multiple pay practices applicable to all non-exempt employees"); *Gui Zhen Zhu v. Matsu Corp*, 424 F. Supp. 3d 253, 266-67 (D. Conn. 2020) (certifying collective where employees were salaried and tipped as both groups were subjected to the same policy of not receiving overtime compensation); *Infantino v. Sealand Contractors, Corp.*, 677 F. Supp. 3d 165, 170 (W.D.N.Y. 2023) (noting that the plaintiff and opt-in plaintiffs were similarly situated when "they were employed by [the d]efendants and that [the d]efendants did not pay them all wages due for overtime work").

In light of Plaintiff's limited burden at the FLSA conditional certification stage, *see Myers*, 624 F.3d at 555, and because Defendants' challenge fails to identify an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice," *see Virgin Atl. Airways*, 956 F.2d at 1255, Defendants' request to reconsider the scope of the covered employees as defined by the January 31, 2025 Opinion and Order is denied.

### II.     The Motions for Injunctive Relief and Sanctions

#### A.     Relevant Procedural History

On March 3, 2025, Defendants filed a motion seeking an order "enjoining [P]laintiff and [P]laintiff's counsel from further telephone and in-person communications with [D]efendants' current and former employees, and an order enjoining any communications that violates the New York States Rules of Professional Conduct." Dkt. No. 85 at 1. Defendants additionally seek sanctions for "abusing the contact list" of individuals employed by Defendants that the Court ordered for production in the January 31, 2025. *Id.*

Defendants allege that they "have been made aware by three current employees that

8

[P]laintiff's counsel has contacted them by telephone," constituting "prohibited solicitation[s] to [] prospective client[s]."[3]  *Id.*  Specifically, Defendants contend that Plaintiff's counsel contacted an employee named Ulises Bonilla Dominguez and "made a prohibited solicitation to a prospective client."  *Id.*  Plaintiff's counsel allegedly "asked Mr. Dominguez if [he] was paid proper wages, which is arguably a proper communication to gather factual information."  *Id.*   According to Defendants, Plaintiff's counsel then "started fishing for information from Mr. Dominguez that was beyond the scope of the conditional class certification," including inquiry to whether "he was ever the subject of racial discrimination" and whether he "ever heard defendant Greg Garofalo talking in an inappropriate manner to his employees."  *Id.*  Plaintiff's counsel purportedly "indicated to Mr. Dominguez that Mr. Dominguez could join a lawsuit if he had information."  *Id.* at 1-2.  On March 4, 2025, Defendants filed an unsigned declaration from Mr. Dominguez attesting to the representations in their motion.  *See generally* Dkt. No. 86.

On March 7, 2025, Plaintiff responded to Defendants' motion.  *See generally* Dkt. No. 87.  Plaintiff disputes Defendant's representations, contending that "[t]he employees contacted by the office of Plaintiff's counsel were included on Defendants' list of additional witnesses"—produced to Plaintiff on December 1, 2024—and that the communications were permitted as they were "for investigative purposes."  *Id.* at 1-2.  Plaintiff further asserts that Defendants "have no admissible evidence" to support their request for injunctive relief, and thus that "[s]anctions are warranted [against Defendants] due to [the] filing of their frivolous [m]otion and refusal to withdraw it."  *Id.* at 3.

That same day, Defendants replied to Plaintiff's March 7, 2025 response.  *See generally* Dkt. No. 88.  Defendants first explained that Mr. Dominguez's declaration was unsigned because

---

[3]  Defendants note that they do not know how many current and former employees purportedly received phone calls.  Dkt. No. 85 at 1.

9

Mr. Dominguez "does not own a printer," and that "for the sake of expediency, [Defendants] simply had him respond in the affirmative if the declaration was accurate, which he did." *Id.* at 1. Defendants further assert that whether Mr. Dominguez "was called from the witness list produced in discovery and not from the class action contact list" did not change the analysis for whether Plaintiff's counsel's conduct was proper. *Id.* Conceding that Plaintiff has "a right to conduct an investigation into the allegations in the [C]omplaint," Defendants argue that Plaintiff's counsel exceeded this scope and "abused the contact information in [D]efendants' witness disclosure list to troll for claims and clients beyond the scope of the case," including searching for "allegations of racial discrimination." *Id.* at 1-2.

Also on March 7, 2025, pursuant to the Court's instruction, Defendants filed another letter reiterating that their motion is not frivolous. *See generally* Dkt. No. 89; Text Order dated Mar. 7, 2025. Counsel for Defendants represents that he "personally interviewed all three of [D]efendants' employees who [P]laintiff contacted," and that Mr. Dominguez "had factual information supporting [D]efendants' motion for an injunction and for sanctions." Dkt. No. 89 at 1. Defendants repeated that the alleged communications were improper and outside the scope of the allegations in the Complaint. *Id.* at 1-2.

Plaintiff filed his final reply on March 10, 2025. *See generally* Dkt. No. 90. Plaintiff explains that the source used to identify the names of employees is critical to whether subsequent contact with those employees is proper. *Id.* at 1. Plaintiff further claims that the communications between the employees and his counsel were within the scope of the allegations of the Complaint and within the Court's prior order, as Plaintiff "did not use the Court-Ordered employee contact list to contact any employee." *Id.* Rather, Plaintiff alleges that he used the list detailing additional witnesses that was provided by Defendants during discovery for investigation purposes. *Id.* at 2.

10

Additionally, Plaintiff claims that the list of additional witnesses provided by Defendants contained discrepancies and inaccurate contact information for the individuals identified on the list. *Id.* at 2; *see also* Dkt. No. 87 at 2. Finally, Plaintiff contends that the call to Mr. Dominguez was brief, pertaining only to work performed, overtime hours, and compensation, and without reference to Mr. Garofalo or any of his comments during employment. *Id.* Plaintiff included a signed declaration by the individual from his counsel's office attesting to the nature of the phone call, as well as pictures of the call log on the phone used to contact Mr. Dominguez. Dkt. Nos. 90-1, 90-2.

### B. Legal Standards

In class and collective actions, "a district court has both the duty and the broad authority to exercise control over [the] class [or collective] action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981); *Hoffmann-La Roche*, 493 U.S. at 171 (stating that the "same justifications" given to the district courts for "broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and the parties" applies to collective actions); *Shibetti v. Z Rest., Diner & Lounge, Inc.*, No. 18-CV-856 (BMC), 2021 WL 1738315, at *4 (E.D.N.Y. May 3, 2021) (explaining that the holding of *Gulf Oil* extends to FLSA collective actions). "This authority 'exists even before a class [or collective] is certified' . . . [and] allows the Court to 'limit communications by plaintiffs, defendants, or both.'" *Shibetti*, 2021 WL 1738315, at *4 (first citing *O'Conner v. Agilant Sols., Inc.*, 444 F. Supp. 3d 593, 601 (S.D.N.Y. 2020); and then citing *Zamboni v. Pepe W. 48th St. LLC*, No. 12-CV-3157 (AJN) (JCF), 2013 WL 978935, at *2 (S.D.N.Y. March 12, 2013)).

11

But "'the mere possibility of abuses does not justify routine adoption of a communications ban that interferes with the formation of a class [or collective] or the prosecution of a class action in accordance with the Rules.'" *Shibetti*, 2021 WL 1738315, at *4 (quoting *Gulf Oil*, 452 U.S. at 104). "[T]he Supreme Court made clear that judicial intervention 'limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties.'" *Mendez v. Enecon Ne. Applied Polymer Sys., Inc.*, No. 14-CV-6736 (ADS) (AKT), 2015 WL 4249219, at *2 (E.D.N.Y. July 13, 2015) (quoting *Gulf Oil*, 452 U.S. at 101-02). In exercising the broad grant of authority to properly manage and supervise FLSA collective actions, "[t]he broad remedial goal of the statute should be enforced to the full extent of its terms." *Hinterberger v. Cath. Health Sys., Inc.*, No. 08-CV-380 (SK) (LGF), 2010 WL 3395672, at *7 (W.D.N.Y. May 13, 2010) (quoting *Hoffman-La Roche*, 493 U.S. at 173).

**C.   Discussion**

As an initial matter, although styled as a motion for preliminary injunction (Dkt. No. 85), Defendants' motion does not even identify the legal standard applicable to a motion for a preliminary injunction. *See Cnty. of Nassau v. Leavitt*, 524 F.3d 408, 414 (2d Cir. 2008) (explaining that to prevail on a motion for preliminary injunction, a movant must demonstrate: "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor."). Nor do Defendants make any cogent argument regarding irreparable harm in the absence of the injunction, or make any showing of manifest injustice. Defendants also fail to proffer any arguments demonstrating

12

that they will be successful on the merits. In short, Defendants have failed to demonstrate why a preliminary injunction is warranted here.

But even if Defendants had articulated the proper standard and addressed the law regarding preliminary injunctions, Defendants' motion still fails. Defendants contend that counsel for Plaintiff violated the New York State Rules of Professional Conduct when phone calls were made to three individuals currently employed by Defendants, which included prohibited solicitations to join Plaintiff's lawsuit and impermissibly inquired into considerations outside the scope of the allegations in this case. Dkt. No. 85 at 1-2. Plaintiff denies Defendants' allegations. Dkt. No. 87 at 1-4.

New York Rule of Professional Conduct 7.3 prohibits a lawyer from soliciting "by in-person or telephone contact, or by real-time or interactive computer-accessed communication unless the recipient is a close friend, relative, former client or existing client." N.Y.R.P.C. 7.3(a)(1); *see also Pagan v. C.I. Lobster Corp.*, 549 F. Supp. 3d 356, 360 (S.D.N.Y. 2021). "In general, courts interpreting Rule 7.3 have determined communications asking specific individuals to 'join the lawsuit' are solicitations." *Velasquez v. Osana Cleaning Corp.*, No. 23-CV-04257 (NJC) (JMW), 2023 WL 8020770, at *6 (E.D.N.Y. Nov. 20, 2023) (quoting *Shibetti*, 2021 WL 1738315, at *6) (collecting cases).

"[T]here is no prohibition against [p]laintiff's counsel seeking to interview witnesses," however, including other employees at a restaurant that is alleged to have engaged in violations of the FLSA. *See Pagan*, 549 F. Supp. 3d at 360; *see also Gordon v. Kaleida Health*, 737 F. Supp. 2d 91, 100 (W.D.N.Y. 2010) (finding communications with employees that were identified from a list provided to plaintiff through discovery were not improper); *Hinterberger*, 2010 WL 3395672, at *9 (same). Additionally, communications from counsel to potential opt-in plaintiffs that "do

13

not explicitly ask [the opt-in plaintiff] to join the lawsuit" or offer representation are not prohibited under Rule 7.3. *See Velasquez*, 2023 WL 8020770, at *7 (collecting cases).

Here, Defendants fail to allege that counsel for Plaintiff improperly communicated with its employees. As an initial note, Defendants only identify Mr. Dominguez as one of the employees contacted by Plaintiff's counsel and submit one un-signed declaration on his behalf. *See* Dkt. No. 86. Although Defendants allege that there were at least two other current employees contacted by Plaintiff's counsel (Dkt. No. 85 at 1), Defendants' failure to identify those individuals or submit any support for the alleged communications made to them precludes the Court from making any determination as to those allegations. Thus, the Court focuses only on the phone call made to Mr. Dominguez.

Defendants have not shown that counsel for Plaintiff's phone call to Mr. Dominguez violated Rule 7.3 of the New York State Rules of Professional Conduct. First, Mr. Dominguez's unsigned declaration is of little, if any evidentiary worth. *See Pena v. Semple*, No. 19-CV-124 (KAD), 2020 WL 4227709, at *2 n.2 (D. Conn. July 23, 2020) (explaining that "[a] declaration must be signed by the declarant and include the date on which it was signed and a statement attesting that 'under penalty of perjury . . . the foregoing is true and correct'" under 28 U.S.C. § 1746 in finding unsigned declarations unpersuasive); *Everytown for Gun Safety Action Fund, Inc. v. Defcad, Inc.*, No. 21-CV-8704 (PGG), 2022 WL 1689638, at *2 (S.D.N.Y. May 26, 2022) (finding unsigned declaration of "no evidentiary worthy"). As Defendants have not presented any other evidence to substantiate their claims, Defendants' request lacks evidentiary support.

And even assuming the truth of Mr. Dominguez's declaration, the allegations still fail to constitute an improper solicitation. The declaration states that Mr. Dominguez was told that: "there were people who wanted to sue [Defendants]"; "that if [Mr. Dominguez] had information

14

it would be good for [him]"; "the more people who join the lawsuit the more likely it is that the employees could win the lawsuit"; and that Mr. Dominguez "should think about talking more about [his] employment with [Plaintiff's counsel], and that [he] should think about joining others who want to sue the restaurant." Dkt. No. 86 at ¶ 10.

Defendants' reliance on *Shibetti* is unpersuasive, as that case involved an attorney's voicemail that expressly requested the potential opt-in individual to "give him a call back" if he had "any interest in joining [the] lawsuit." 2021 WL 1738315, at *6. Unlike the circumstances of *Shibetti*, the communications as alleged in Mr. Dominguez's declaration lack an unequivocal or direct offer of representation or request to join Plaintiff's suit on his counsel's behalf. Rather, the substance of the conversation appears to relate to investigatory inquiries, which are permissible forms of communication. *See Pagan*, 549 F. Supp. 3d at 360 (finding no solicitation where attorney made phone calls to individuals employed by restaurant to gather information). The allegations thus do not establish an improper solicitation under Rule 7.3. *See, e.g.*, *Jerry Gradl Motors, Inc. v. ACV Auctions, Inc.*, No. 21-CV-00409 (CR), 2022 WL 949795, at *6 (W.D.N.Y. Mar. 30, 2022) (finding no violation of Rule 7.3 where the attorney did not directly ask the potential opt-in plaintiff to join the lawsuit or to represent him, but rather sought relevant information to the lawsuit and mentioned the potential benefit to those who joined the suit); *Velasquez*, 2023 WL 8020770, at *7 (finding no solicitation in the absence of express requests to join the lawsuit or offers of representation); *Spagnuoli v. Louie's Seafood Rest., LLC*, 20 F. Supp. 3d 348, 358 (E.D.N.Y. 2014) (finding no solicitation where a Facebook message conveying to putative class member to "contact [her] if [the putative class member was] interested in joining the suit" was not an improper solicitation under Rule 7.3).

15

With respect to Defendants' claim that Plaintiff's counsel improperly "fished" for information outside the scope the instant case in asking Mr. Dominguez questions related to racial discrimination or mistreatment, Defendants' concerns lack support at this stage of the litigation. As explained above, investigatory questions when communicating with potential witnesses is permitted, including those currently employed by Defendants. *See Pagan*, 549 F. Supp. 3d at 360; *see also Gordon v. Kaleida Health*, 737 F. Supp. 2d 91, 100 (W.D.N.Y. 2010) (finding communications with employees that were identified from a list provided to plaintiff through discovery were not improper); *Hinterberger*, 2010 WL 3395672, at *9 (same). Although it is true that the Court has a duty to guard potential opt-in plaintiffs from "misleading communications," *Hoffman-La Roche*, 493 U.S. at 171, "court-imposed restrictions on an attorney's ability to communicate with prospective class members, even after completion of the initial notice phase, unless factually justified, 'involve serious restraints on expression,' protected by the First Amendment." *Hinterberger*, 2010 WL 3395672, at *8 (quoting *Gulf Oil*, 452 U.S. at 104).

Ultimately, Defendants' allegations lack evidentiary and legal support, as their submissions include one unsigned declaration from Mr. Dominguez and citations to limited but distinguishable authority. *See* Dkt. No. 85 at 3; *see generally* Dkt. Nos. 88-89. Further, the allegations are contradicted by Plaintiff's submissions, which include a signed declaration refuting Defendants' allegations and a screenshot exhibiting that the call at issue lasted 1 minute and 49 seconds. Dkt. Nos. 90-1, 90-2. At bottom, Defendants' request is not supported by "a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *See Gulf Oil*, 452 U.S. at 102.

Defendants are, however, reminded that procedural mechanisms remain available for future use should Plaintiff seek to introduce irrelevant or otherwise improper submissions that are

outside the scope of the Complaint, including motions made pursuant to Federal Rules of Civil Procedure 12(f) and 26, as well as motions *in limine* provided they are proper and substantiated.

Accordingly, Defendants' request for injunctive relief concerning Plaintiff's communications with potential opt-in plaintiffs is denied, without prejudice and with leave to renew.

**D.    Sanctions**

The Court further declines to grant the parties' cross-requests for sanctions. Under 28 U.S.C. § 1927, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct." "Imposition of a sanction under [Section] 1927 requires a 'clear showing of bad faith,'" *Pagan*, 549 F. Supp. 3d at 361 (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986)), and remains in the sound discretion of the [Court]." *Id.* (quoting *Bagley v. Yale Univ.*, 315 F.R.D. 131, 153 (D. Conn. 2016)). Here, neither party has demonstrated bad faith notwithstanding the already-contentious history of this litigation and the present circumstances before the Court. Accordingly, both parties' request for sanctions is denied.

As a final note, the Court reminds Plaintiff that all future communications must comply with New York's ethical rules and *Gulf Oil*. Should the Court be presented with credible evidence that Plaintiff has improperly communicated with potential opt-in individuals or with frivolous motions by any party, then Defendants may renew their motion and the Court will issue sanctions as appropriate.

**III.    Conclusion**

17

For the foregoing reasons, the Court denies Defendants' motion for reconsideration (Dkt. No. 79) concerning the Court's January 31, 2025 Opinion and Order.

Furthermore, Defendants' motion for a preliminary injunction based on improper communication with potential opt-in class members (Dkt. No. 85) is denied.  The Court also denies both Defendants' and Plaintiff's cross-motions for sanctions (Dkt. Nos. 85, 87).

Dated:  Brooklyn, New York
March 25, 2025               **SO ORDERED.**

                                        */s/ Joseph A. Marutollo*
                                        JOSEPH A. MARUTOLLO
                                        United States Magistrate Judge